Johnson, Appellant, *v.* Peoples First National Bank and Trust Company.

Argued October 6, 1958. Before JONES, C. J., BELL, MUSMANNO, JONES and COHEN, JJ.

*August L. Sismondo,* with him *Vincent R. Massock,* for appellant.

*Francis H. Patrono,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, November 10, 1958:

This appeal presents a question of first impression in this Court. Can a widow maintain a trespass action against her deceased husband's personal representative to recover damages for personal injuries received by

her as the result of the husband's negligent operation of a motor vehicle which negligent conduct occurred during coverture?

Maude E. Johnson, appellant, on September 23, 1957, instituted in the Court of Common Pleas of Washington County a trespass action against Peoples First National Bank and Trust Company, Executor under the last will of Donald Johnson, deceased, appellee, to recover damages for personal injuries sustained by her in an automobile accident which allegedly occurred as the result of her deceased husband's negligent operation of an automobile in which she was a passenger.[1] To appellant's complaint appellee filed preliminary objections in the nature of a demurrer raising four objections: (1) that appellant was suing her deceased husband's estate; (2) that during her husband's lifetime she had no cause of action against him; (3) that appellant has no cause of action against his estate which survived his death and (4) inasmuch as she could not sue him if he were alive she can not bring this action against his personal representative by reason of the provisions of §603 of the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.603.

The Court below, with one judge dissenting, sustained appellee's preliminary objections and entered judgment for defendant. From the entry of such judgment this appeal was taken.

In Pennsylvania, as in many other states, the rule is that one spouse cannot maintain a trespass action

---

[1] The accident occurred on November 22, 1955 in Maryland. It happens that the law of Maryland and of Pennsylvania on the subject of interspousal trespass actions is the same. *David v. David*, 161 Md. 532, 157 A. 755. Even if it were not so, Pennsylvania law—the lex fori—would govern: *Poling v. Poling*, 116 W. Va. 187, 179 S.E. 604; *Kircher v. Kircher*, 288 Mich. 669, 286 N.W. 120; *Mertz v. Mertz*, 271 N.Y. 466, 3 N.E. 2d 597.

against the other spouse during coverture to recover damages for personal injuries caused by such other spouse.[2] Other states, either by statute or decisional law, have taken a contrary position and do permit interspousal tort suits.[3] The validity of the Pennsylvania rule is not questioned nor at issue on this appeal.

Appellant concedes that she could not have maintained this action during the decedent's lifetime. However, she urges that the reason her husband, during his lifetime, was immune from suit at her hands was one of public policy,—the preservation of domestic harmony and felicity and marital happiness—and that the termination of the family relationship occasioned by the death of her husband eliminates the reason for the application of this rule of immunity.

An examination of our decisions clearly indicates that ". . . *the personal immunity which protects* [*the husband or wife*] *is based simply upon the policy of preserved domestic peace and felicity*": *Koontz v. Messer et al.*, 320 Pa. 487, 493, 181 A. 792. (Emphasis supplied) ; *Kaczorowski v. Kalkosinski, Admr.*, 321 Pa. 438, 443, 184 A. 663. In *Parks v. Parks*, 390 Pa. 287, 296, 135 A. 2d 65, we recently said: "We have, however, recognized that the doctrine of intra-family immunity from suit by a member of the family expires upon the death of the person protected and does not extend to a decedent's estate for the reason that death terminates the family relationship and there is no

---

[2] *Koontz v. Messer et al.*, 320 Pa. 487, 181 A. 792; *Kaczorowski v. Kalkosinski, Admr.*, 321 Pa. 438, 184 A. 663; *Kiser v. Schlosser*, 389 Pa 131, 132 A. 2d 344; *Fisher v. Diehl*, 156 Pa. Superior Ct. 476, 40 A. 2d 912. See: *Bohenek v. Niedzwiecki*, 142 Conn. 278, 113 A. 2d 509. See also: 43 *A.L.R.* 2d 632 for collected cases from other jurisdictions.

[3] 43 *A.L.R.* 2d 632.

longer a relationship in which the state or public policy has an interest. Kaczorowski v. Kalkosinski, Admr., 321 Pa. 438, 184 A. 663; Davis v. Smith, 126 F. Supp. 497." "When the policy behind a rule no longer exists, the rule should disappear. There is no marital peace and felicity to be preserved here": *Kaczorowski v. Kalkosinski,* supra, at 444. The rationale of the rule has been extinguished, by the death of the husband; sound logic precludes its application to the instant situation.

Appellee, however, contends, even though the rule be not applicable to this situation, the appellant—by a resort to the fictional unity of husband and wife which would render the wife's legal existence "suspended during the marriage, or at least . . . incorporated or consolidated into that of the husband" (1 Blackstone, Commentaries *442,443; 2 id. *433; Co. Litt. §3a)—is without any cause of action and, therefore, the survival statute is of no avail to her. Stated otherwise, where a wife [or husband] suffers an injury through the negligent conduct of the husband [or wife], does such injured spouse acquire a cause of action against the other spouse, (a substantive right), which, solely because of the marital relationship she cannot enforce, (a procedural matter), or does the tort give rise to no cause of action whatsoever in the injured spouse?

Appellee overlooks the realities of the situation and modern society's recognition—by statute and otherwise—of a separate legal existence for a wife. The shackles with which the common law fiction bound a wife no longer exist. The public policy of prevention of marital discord alone can furnish rational justification for a wife's disability to sue her husband for a tort during coverture: such policy is directed to procedure, rather than substance. As early as 1826, Mr.

Justice DUNCAN speaking for this Court in *Dougherty v. Snyder,* 15 S. & R. 84, 91 recognized this distinction: "The last objection remains to be considered: it is, that if it be the law, that the wife cannot sue the husband, she cannot sue her husband's executors; but if this be a contract where the day of payment is postponed until the death of the husband, then the right of action is only suspended. There are numerous decisions to this purpose; and it would not follow, that if it were payable immediately the debt was extinct; the remedy only is suspended, and one, among many other reasons for this is, that the husband and wife form but one body; but on his death, she being the survivor, has all the right not extinguished by the marriage; and therefore, her husband being dead, this can cause no strife between them. She may sue his executors. . . . It does not follow, because for certain reasons the right may be qualified, and recovery suspended during the coverture, yet when the reasons are removed by the death of the husband, she should have no remedy against the executors." The tort of a husband or wife which visits injury upon the wife or husband results in a cause of action; by reason of public policy such cause of action cannot be enforced during coverture. In *Schubert v. Schubert Wagon Co.,* 249 N.Y. 253, 256, 164 N.E. 42, Mr. Justice CARDOZO, then Chief Judge of the New York Court of Appeals, stated: "The defendant [husband's employer] to make out a defense, is thus driven to maintain that the act, however negligent, was none the less lawful because committed by a husband upon the person of his wife. This is to pervert the meaning and effect of the disability that has its origin in marital identity. *A trespass, negligent or willful, upon the person of a wife, does not cease to be an unlawful act, though the law exempts the husband from liability for the damage.* Others may not hide be-

hind the skirts of his immunity."[4] (Emphasis supplied.) Danger to marital happiness and harmony arises not from the *existence* of a cause of action arising from the tort, but rather from its *enforcement*.

Death having terminated the marriage, domestic harmony and felicity suffer no damage from the allowance of the enforcement of the cause of action. Such a conclusion is not without precedent in Pennsylvania. In *Gracie's Estate*, 158 Pa. 521, 27 A. 1083, we sustained a widower's right to maintain a claim against his deceased wife's estate. In *S. S. Kennedy, Executor of Nancy Knight, dec'd. v. Jeremiah D. Knight, Executor of Benjamin Knight, dec'd.*, 174 Pa. 408, 409, 34 A. 585—a suit by a deceased wife's personal representative against her deceased husband's personal representative to enforce payment of a note—we affirmed the lower court which had stated: "The unity of the persons of the husband and wife, under the common law, is the source of the disability which prevented her from maintaining a suit against her husband . . . and this disability is at the foundation of the exception in the statute of limitations protecting her from its operation". In *Koontz v. Messer et al.*, 320 Pa. 487, 181 A. 792,—a suit by a wife against her husband's employer wherein she claimed damages for injuries received from the negligent operation of a motor vehicle by her husband in the course of his employment—we clearly recognized that the immunity from suit of the husband arose not from any lack of a cause of action on the part of the wife but from a disability to sue during coverture. See also: *Minkin v. Minkin*, 336 Pa. 49, 7 A. 2d 461; *Fisher v. Diehl*, 156 Pa. Superior Ct. 476, 486, 40 A. 2d 912.

---

[4] See: McCurdy, "Torts Between Persons in Domestic Relation", 43 Har. L. Rev. 1030, 1032. Cf. *Marsteller v. Marsteller*, 93 Pa. 350.

Appellee further urges that appellant's suit is not maintainable under §603 of the Fiduciaries Act of 1949, supra.

At common law all causes of action by or against a person terminated and abated upon such person's death. Survival of causes of action arise only through the medium of so-called "survival statutes."[5]

The present statute governing this action is the Fiduciaries Act of 1949, supra. Section 601 of the Fiduciaries Act of 1949, provides: "All causes of action or proceedings, real or personal, except actions for slander or libel, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants." Section 603 of that Act reads, inter alia, as follows: "An action . . . which survives a decedent may be brought by or against his personal representative . . . as though the decedent were alive."

---

[5] In Pennsylvania our legislature by the Act of February 24, 1834, P. L. 73, §28 provided for the survival of actions but expressly excepted "wrongs done to the person": §18 of the Act of April 15, 1851, P. L. 669, provided that an action based upon negligence should not abate by reason of the death of the *plaintiff* but that his executor could proceed with the action; the Act of June 24, 1895, P. L. 236, provided: "Section 1. Be it enacted, &c., That any right of action which may hereafter come into being by reason of injury wrongfully done to the person of another, shall survive the death of the wrong-doer, and may be enforced against his executor or administrator either by continuing against such personal representative a suit which may have been brought against the wrong-doer himself in his lifetime, or by bringing an original suit against his representative after his death." The Act of June 7, 1917, P. L. 447, §35 provided that a personal representative could be sued upon all personal actions which might have been maintained against the defendant. The effect of these survival actions is to continue causes of action already in existence during decedent's lifetime: *Pezzulli, Admr. v. D'Ambrosia*, 344 Pa. 643, 26 A. 2d 659; *Piacquadio, Trustee v. Beaver Valley Service Co. et al.,* 355 Pa. 183, 49 A. 2d 406.

From the statutory language of §603—"as though the decedent were alive"—appellee would have us conclude that, since the appellant lacked the right to sue her husband during his lifetime, the statute precludes a suit against his personal representative after his death. Such contention is without merit. Such a narrow and technical construction of the statute would subvert the legislative intent; the legislative intent was to broaden, not limit, the survival of causes of actions.

Our conclusion is that neither public policy, nor lack of a justiciable cause of action nor statutory prescription precludes this suit of a wife against her husband's personal representative. No sound reason appears to require a contrary result.

Judgment reversed[6] with a procedendo.

---

[6] A division of opinion on the question herein presented has existed among the lower courts of the Commonwealth. In line with the conclusions reached in this opinion: *Pittman v. Deiter*, 10 D. & C. 2d 360; *Brower v. Webb*, 5 D. & C. 2d 193; *Rissel v. Rissel*, 50 Berks 100. Contra: *Lewellyn v. Mensch*, 5 D. & C. 2d 67; *Smith v. Smith*, 14 D. & C. 466.