Meisel, Appellant, v. Little.

Argued March 19, 1962. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Murray S. Love,* with him *Wirtzman, Sikov and
Love,* for appellants.

*Robert S. Grigsby,* with him *Pringle, Bredin & Martin,* for appellee.

OPINION BY MR. JUSTICE EAGEN, May 3, 1962:

Janet Marie Meisel, a minor, was injured in an accident while riding as a guest passenger in an automobile operated by the defendant. At the time, she was single. Approximately ten months later, she married the defendant. Subsequently, these actions were instituted against the defendant, Wayne Richard Little, alleging that his careless driving caused the accident. The plaintiff, Mildred Meisel, mother of the injured minor, sued to recover the money necessarily expended in treatment of her daughter's injuries and also for earnings lost during her minority. The minor plaintiff sued through her natural guardian to recover reasonable compensation for the pain and suffering caused by the injuries and also for future loss of earning power.

After answer and reply filed to new matter contained therein, the defendant filed a motion for judgment on the pleadings in the one action wherein the minor, Janet Marie Meisel, was the plaintiff. The court below sustained the motion. Both plaintiffs filed an appeal.

The plaintiff, Mildred Meisel, was not aggrieved by the order appealed from. The independent action filed on her behalf was not really involved. Her appeal was undoubtedly entered because the court below mistakenly said in the course of its opinion that the action was derivative and could not be maintained. This is not correct. This action may be pursued irrespective of the action of the minor plaintiff. However, since the order appealed from did not in fact aggrieve the plaintiff, Mildred Meisel, her appeal must necessarily be quashed.

The basic issue raised in the other appeal is whether or not a wife may maintain an action against her husband for personal injuries caused by a tort committed prior to marriage.

At common law *neither* a husband nor wife could sue the other for injuries due to torts committed before or during their marriage. This was based upon the legal premise that a husband and wife are one person, one entity. See, Prosser on Torts, 2d Ed. 670 (1955). This rule, now based upon social reasons and public policy, is still followed in a great majority of jurisdictions in the United States. See, 43 A.L.R. 2d 632, 18 P.L.E. Husband and Wife §82. The same rule has been always strictly adhered to in this Commonwealth. However, here in Pennsylvania, *it is both statutory and decisional.* The Act of June 8, 1893, P. L. 344, §3, as amended by the Act of March 27, 1913, P. L. 14, §1, 48 PS §111, specifically prohibits such an action. It provides as follows: "Hereafter a married woman may sue and be sued civilly, in all respects, and in any

form of action, and with the same effect and results and consequences, as an unmarried person; *but she may not sue her husband, except in a proceeding for divorce, or in a proceeding to protect and recover her separate property; nor may he sue her, except in a proceeding for divorce, or in a proceeding to protect or recover his separate property.*" (Emphasis supplied)

The present case does not fall within any of the above enumerated exceptions. Unliquidated claims of damage are not "property" within the meaning of the Act. See, *Miller v. Miller*, 44 Pa. 170 (1863); *Sensenig v. Penna. R.R. Co.*, 229 Pa. 168 (1910); *Manganiello v. Lewis*, 122 Pa. Superior Ct. 435 (1936); *Chromy v. Chromy*, 10 Pa. D. & C. 2d 791 (1957); *Gulian v. Gulian*, 7 Pa. D. & C. 2d 247 (1954); *Davis v. Davis*, 23 Pa. D. & C. 2d 52 (1960); 41 C.J.S. Husband and Wife, §392(b); 13 Standard Pa. Practice §21.

Moreover, this Court has said repeatedly over a long period of years that the common law prohibition of litigation between spouses has not been abrogated by the Acts of 1893 or 1913, supra. See, *Koontz v. Messer and Quaker State Oil Refining Company*, 320 Pa. 487, 181 A. 792 (1935); *Kaczorowski v. Kalkosinski, Admr.*, 321 Pa. 438, 184 A. 663 (1936); *Parks v. Parks*, 390 Pa. 287, 135 A. 2d 65 (1957); *Johnson v. Peoples First National Bank and Trust Co.*, 394 Pa. 116, 145 A. 2d 716 (1958).

It is argued that the rule is based upon an antiquated fiction which has been dissipated by the passage of the Married Women's Acts beginning in 1848. This overlooks the fact that the legislature in clear specific language has said as late as the year 1913, that neither a husband nor a wife may sue the other during coverture upon such a cause of action. Appellant's position might be more realistically advanced if the rule rested completely upon decisional law. But, this is not the case. There exists a categorical legis-

lative prohibition. The wisdom of the statutory provision is not for us to say.

Appellant also requests us to rule that the Statute of Limitations is tolled where the tort occurs before a marriage, which is, in turn, consummated before the running of the statutory period. This question is not now before us. We will not anticipate a situation not involved in the facts presently involved.

Appeal of Mildred Meisel (No. 10) is quashed.

In Appeal No. 9, Judgment is affirmed.

———

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

On July 6, 1958, Wayne Richard Little carelessly, recklessly and negligently ran his automobile into an "underpass" on Saw Mill Run Boulevard in Pittsburgh and, as a result of the collision, the girl riding with him, Janet Marie Meisel, sustained bodily injuries. She put the matter into the hands of an attorney who, through her mother (since she was a minor), brought an action in trespass against Wayne Richard Little. The suit was filed on June 15, 1960. In the meantime, however, something else happened to Janet Marie. She fell in love with her tortfeasor and married him, this taking place on April 25, 1959.

When Wayne Richard Little was served with the papers in the trespass action he notified the attorney for the insurance company which had insured his car against liability for damages. It must be stated here parenthetically that during trials at nisi prius in personal injury cases the pleasant fiction is entertained that no one knows that the defendant carries liability insurance because it is supposed that such knowledge on the part of the jury might predispose it in favor of the plaintiff. However, here in the deliberations of the court of last resort in the state, such fictions must be

set aside, if conclusions consonant with realities are to be attained. Thus, in this Dissenting Opinion when I speak of the actions of the defendant Wayne Richard Little I mean, of course, the actions of his insurance company which is the real party opposing the suit filed by Janet Marie.

Wayne Richard Little, then, upon receiving the complaint in this case, filed a motion for judgment on the pleadings, averring that "it is contrary to the public policy of the Commonwealth of Pennsylvania for a spouse to maintain an action in trespass for bodily injuries against a surviving spouse." The Court of Common Pleas of Allegheny County sustained the motion and dismissed the plaintiff's complaint.

The plaintiff appealed, and the Majority of this Court has affirmed the decision of the court below, stating that the prohibition in Pennsylvania against a wife suing her husband during coveture is "statutory and decisional." The Majority Opinion calls attention to the fact that "At common law *neither* a husband nor wife could sue the other for injuries due to torts committed before or during their marriage. This was based upon the legal premise that a husband and wife are one person, one entity."

In support of this proposition it cites Prosser on Torts, 2d Ed. 670. Aside from the fact that the "premise" that "a husband and wife are one person" is a palpable impossibility, the Majority, after accepting Prosser as an authority, fails to state that Prosser, in his monumental work on Torts, only two pages after the historical statement noted by the Majority, devastatingly condemns the common law one-person entity thesis: "All this state of affairs belonged to a *social order which has been dead for more than a century.* Beginning about 1844 statutes known as Married Women's Acts, or Emancipation Acts, were passed in all American jurisdictions, which were designed primarily

to secure to a married woman a separate legal identity and a separate legal estate in her own property." (Emphasis supplied)

In Pennsylvania married women now may own property free from the interference of their husbands, they may sue and be sued as if they were unmarried, they may become accommodation makers and sureties and mortgage without joinder of their husbands, and may acquire, own, possess, control, use, lease, or mortgage any property of any kind, real personal or mixed, and they may convey real property without the joinder of the husband. The links of the chain which fastened the common law wife like a slave to a self-assuming superior and tyrannical husband have been smashed one by one until the wife in America now stands respected and accepted in society as a free person in every phase of her individual activities.

In spite of all this, we find that this Court at this late hour in the afternoon of a job well done in behalf of the emancipation of women from the unreasonable thongs of common law subserviency, still insists that somehow husband and wife are yet one entity and that if a wife sues her husband she disrupts that entity and that marital discord and domestic infelicity are bound to follow. The Majority Opinion thus states in the case at bar that for a wife to sue her husband in tort actions is against "public policy." The defendant's brief, expatiating on this subject, asserts that this denial of the wife's right to sue her husband "is based on the sound principle of public policy to promote family unity and avoid family discord and disturbance."

But does such a repression actually promote family unity? If a husband beats his wife, it can, with some degree of realism, be assumed that the family unity has now been shattered, at least until the wife recovers from her bruises and her "black eyes" regain the color

of their normal pigmentation. How can that family unity be further damaged if the wife proceeds to civilly sue the husband for the harm he has brought to her? The law permits the wife to prosecute her husband criminally in such a situation. Does that kind of a procedure, which may end in the husband's incarceration, promote family unity?

As much as the defendant (the insurance company) may eulogize "family unity" and as much as it may argue that the inability of the wife to sue the husband in tort actions will "avoid family discord and disturbance," it is certain that such inability has done nothing, so far as can be perceived, to reduce the divorce rate in Pennsylvania. In 1960 there were 71,835 marriages in Pennsylvania and there were 14,429 divorces. The Pennsylvania Department of Health, Division of Statistics, has stated that the divorce rate is increasing and has pointed out that the divorce rate of 1960 was 3.9% higher than that of 1959.

That the prohibition against intra-marital civil litigation promotes family unity is a fantasy woven of the flimsiest filaments is obvious to any one who looks at the facts of life and is not deceived by cliches and invention. In this very case we know that it is not Wayne Richard Little who stands to lose any money if Janet Marie recovers in her lawsuit against him. It is the insurance company which will have to pay the verdict. The payment of such a verdict by the insurance company, thus will *promote,* instead of disturb family unity. Certainly both husband and wife will be happy in the realization that medical bills and and other expenses accruing because of the accident of July 6, 1958, will come out of the insurance company's treasury and not the young married couple's modest budget.*

---

* Although the plaintiff's mother has filed a suit against Wayne Richard for medical expenses charged to her prior to her daugh-

We must never lose sight of the fact that the accident which brought about this lawsuit occurred *prior* to the marriage between Janet and Wayne. If the theory that a suit between husband and wife creates a mutually hostile feeling is to be given any credence, what explanation is offered for the fact that that supposed hostility did not prevent Janet and Wayne from marrying one another? Certainly the love which is strong enough to bring two persons together after one has hurt the other in an automobile accident would be strong enough to hold them together after a court adjudicates the strictly business relationship between them arising out of that accident. If Janet had a car of her own and it was damaged by Wayne before or during marriage, the law would permit her to sue him for the damage done to her car but, according to the Majority decision, she could not sue him for physical injuries which she sustained in that same accident. Is it logical, consistent and in accordance with common sense that a wife may sue her husband for a broken fender but not for a broken leg?

There is no legal prohibition against a wife suing her husband (and vice versa, of course) if the action is based on contract. Is it to be assumed that there is less likelihood of engendering disharmony and enmity if either spouse sues the other over the breaking of a formal agreement than over an unpremeditated traffic mishap? Anyone who knows human nature and has had any experience in the ways of life knows how much bitterness sometimes arises between relatives in a battle over a disputed piece of property, over profits from a business, or interpretation of a will.

Certainly if hatred is the product of conflicting interests, it is more apt to arise when one spouse charges

---

ter's marriage, the husband will be liable for all expenses for his wife after the marriage, no matter how incurred.

the other with deliberate breaking of one's promise solemnly recorded in a solemn covenant than if the conflicting interests spring from a spontaneous miscalculation in the driving of an automobile. After all, the suit in this case is based on an accident which the wife charges resulted from her husband's negligence. Negligence does not import enmity. Negligence is simply carelessness. It is not based on premeditation which, on the contrary, is always charged in the deliberate breaking or breaching of a contract.

If litigation between husband and wife is against public policy, it should not be permitted at all, but when the courts permit such litigation rising out of a contractual relationship but prohibits it when it arises out of accident, a paradox is created which lay people have difficulty in comprehending. And when paradoxes of this gravity are noted by the people, a lessening of respect for and faith in the wisdom of the law and the courts is inevitable.

Why does one take out liability insurance on one's automobile? Primarily, of course, it is to save one from heavy financial burdens in the event he should unfortunately get into an accident and be sued. But there is another reason too, and that is, that the motorist wishes to be in a position to do something for the person he may unintentionally hurt. Every person of honesty and self-respect, with an appreciation of the dignity of mankind, desires to meet his just obligations; and the least that one can do for the person he has unintentionally brought to grief is to compensate him for the expenses he has had to undergo and the loss he suffers through no fault of his own. The conscientious motorist thus is thinking about protecting the whole world from his mistakes as much as he is protecting himself. Is it not strange, then, through the workings of the law as expounded by this Court that in the financial ambulance which the motorist has pur-

chased to carry to safety, remedial care, and renewed well-being such persons he may have injured on life's highway, there is room for everybody but those he loves most? The remotest stranger has a place in that ambulance but not his wife, not his children, nor his parents. Why? Not because he hasn't paid premiums on a policy which is intended to cover anybody he may injure, but because this Court (and I am, of course, speaking here only of Pennsylvania, because there are other States which look upon the matter a little more realistically and more in conformity with principles of true justice) has declared that somehow, some way (not explained by the Majority) it is against public policy for one to take care of his own.

Of course, it isn't the Majority of this Court as at present constituted which has announced this cruel doctrine. The present Majority is only carrying out a rule heretofore proclaimed by other majorities of this Court. I would change the rule. I would bring an end to glaring injustices of the kind which developed in the case of *Parks v. Parks,* 390 Pa. 287. In that case the Majority held that a five-year-old child could not maintain an action in tort against its parents on the theory that such an action would disrupt family unity and promote family discord and disturbance. The Majority said this in spite of the fact that, in view of the insurance in the case, the parents would not be compelled to expend a dollar of their own money as the result of any verdict rendered in the case. "Where, therefore, would there arise any cause for family disharmony?" That is the question I asked in my dissenting opinion and it was not answered.

I refer to that case particularly because I believe the time has come to overrule, disavow and repudiate what was stated by the Majority in that case. The Majority said: "Family relationship is a two-way affair: parental devotion and care and affection may still flow

toward the member of the family confined in the institution [the baby was in a hospital on account of a brain injury] and this phase of family relationship may well be severed by litigation between the child and the parent."

I referred to this argument at the time as "sheer sophistry," which, of course it was and still is. To say that a family relationship will be severed because an injured child is to receive money to buy medicine, to employ doctors, to hire nurses, to rent a hospital bed, and to do everything that science can do to restore vigor to a helpless frame and to light the lantern of a darkened brain—is to say what is opposed to demonstrated phenomena, contrary to common knowledge, repugnant to the law of cause and effect, and antagonistic to established reality based upon love, reverence, and loyalty between parent and child.

The same is true in the case at bar. If this Court is of the view that under no circumstances may a wife sue her husband, it should say so didactically, arbitrarily and finally. It should not attempt an explanation which offends against reason, insults logic and jettisons justice.

But the present Majority says that it is bound not only by prior decisions of this Court but by statute. Let us look at the statute to which the Majority Opinion refers. The Act of Assembly of June 8, 1893, P. L. 344, §3, as amended by the Act of March 27, 1913, P. L. 14, §1, 48 P.S. §111, provides, inter alia, "Hereafter a married woman may sue and be sued civilly, in all respects, and in any form of action, and with the same effect and results and consequences, as an unmarried person; but she may not sue her husband, except in a proceeding for divorce, or *in a proceeding to protect and recover her separate property* . . ." (Emphasis supplied)

What is separate property? It is not confined to real estate. Obviously it includes personal property.

Janet's right to recover for her injuries became a property right on the day the accident occurred. It was a "thing in action." "Money due on bond, note, or other contract, damages due for breach of covenant, for the detention of chattels, *or for torts, are included under this general head or title of things in action.*" (Emphasis supplied). 2 Kent's Commentaries on American Law, 351, 14th Ed.

Under the Act of June 3, 1887, P. L. 333, the right of a wife in an action for a tort done to her is her separate property. (*Walker v. Philadelphia,* 195 Pa. 168.)

In the case of *Carver v. Ferguson,* 254 P. 2d 44, the plaintiff, who, like the one in the case at bar, was injured through the negligence of the man she later married, brought suit against him during coverture. The trial court rejected the suit, but the District Court of Appeals, Third District, California, reversed stating: ". . . the entire transaction must be regarded as one by the wife concerning her separate property, as to which no disability to litigate can be asserted according to the fortuitous circumstance of whether the defendant happens to be her husband instead of a third party . . . *The fundamental feature in this case is the fact that the right accrued to the wife prior to marriage.*" (Emphasis supplied)

The language in the Pennsylvania Act of 1893, as amended, is not as absolute as today's Court holds it to be. As recently as 1958, this Court permitted a trespass action by a widow against her deceased husband's personal representative in the case of *Johnson v. Peoples First Nat. Bk. & Tr. Co.,* 394 Pa. 116. Mrs. Maude Johnson was injured in an accident resulting from the negligent operation of an automobile being driven by her husband, Donald Johnson. After his death she brought suit against the executor of her husband's estate. The trial court held that the Act of 1893 barred her from bringing suit on the basis that

since she could have no action against her husband during his lifetime she had no action against his estate after his death. I was a member of the Court which reversed the trial court, and of course participated in that wise and proper decision. However, under the ruling of this Court today, the action of this Court in the *Johnson* case was improper. The barring of a suit by a wife against her husband during his lifetime is predicated (as the Majority holds) on the assumed public policy of preserving domestic harmony and felicity. I don't see how that policy changes because the husband is dead. Does a widow love her husband less after he dies? What about the surviving members of the family,—the family which is the backbone of organized society? If there is something morally incorrect about showing the husband to be wrong while he is alive, it would seem to me to be doubly wrong to attack him when he is dead and cannot defend himself. I repeat that I emphatically approved of the decision in the *Johnson* case when it was made and I still heartily endorse it as good law today, and I believe that it is a precedent for reversing the decision of the lower court in the case at bar, for if it is proper for a wife to sue her husband, in order to protect her property rights, after her husband is dead, because of a negligent act he performed while he was her living husband, it should be proper for a wife to sue her husband for a negligent act he performed *before* he became her husband.

The Act of 1893 states, as heretofore quoted, that a wife "may not sue her husband, except in a . . . proceeding to protect and recover her separate property." If this language is to be interpreted as it has been today in the case at bar, a wife would have no right to participate in a trespass action where her husband is brought in as an additional defendant. Whether she has sued him originally or additionally, she is *still suing him,* and if suing him is against public policy be-

cause such an action disturbs the domestic tranquillity and marital felicity, I fail to see how public policy is appeased by her suing him through a third person.

In the case of *Koontz v. Messer,* 320 Pa. 487, Mrs. Koontz was injured as the result of the negligence of her husband, Forrest Koontz, an employee of the Quaker State Oil Refining Co., and while he was engaged in the course of that company's business. Mrs. Koontz entered a suit in trespass against the company and a Samuel Messer, the plaintiff's father and owner of the car. The defendants brought in Forrest Koontz as an additional defendant. The case proceeded to trial and the jury returned verdicts in favor of the plaintiff against the original defendants and in favor of the original defendants against Koontz, the additional defendant. The defendants appealed, seeking judgment n.o.v., arguing that since Mrs. Koontz could not sue Koontz, who was her husband, she could not sue his masters. They reasoned that since a master's liability is a derivative one, the master could not be liable if the servant is not liable. Under the ruling of this Court today, the argument of the defendants in the *Koontz* case should have been a valid one because if, under the Act of 1893 Koontz could not be held liable in damages to his wife for any tortious act, on what ground should his employer be liable when the supposed liability is based on the husband's tortious act? If the purpose of the Act of 1893 is to preserve domestic and marital tranquillity, as this Court says today, what happened to that domestic tranquillity in the Koontz family when Koontz was brought in as an additional defendant? At that trial Mrs. Koontz had to show that her husband was at fault, that he had improperly driven the car, that he was inattentive, that he was reckless, and so on. If this was proper, in spite of the Act of 1893, why is it not proper in the instant case for Mrs. Janet Marie Little to show what Wayne Richard Little did when he was *not* her husband?

In *Fisher v. Diehl,* 156 Pa. Superior Ct. 476, Mr. and Mrs. Maurice Fisher (driver and passenger in an automobile) brought suit in trespass against Richard S. Diehl, owner of the truck, for injuries sustained when the truck collided with the automobile. Diehl brought in Maurice Fisher as an additional defendant and the jury returned a verdict in favor of Mrs. Fisher against Richard Diehl *and* Maurice Fisher. Maurice Fisher (undoubtedly speaking through his insurance company) moved for judgment n.o.v., on the ground that he was the husband of the plaintiff and, therefore, her action against him was improper. The Superior Court said that the husband was not a party defendant to the action, so far as Mrs. Fisher was concerned. Of course, that statement was extravagant subterfuge. Why wasn't he a party defendant? He was sued, he had to appear in court against his wife, and he had to pay money which went to his wife. What makes a person a party defendant? The Superior Court said that the judgment against him was "simply a judgment enuring to the benefit of the original defendant if he pays or is required to pay the wife's judgment; and it then requires the husband to pay to the original defendant only one-half of the damages paid by the latter as a result of the joint negligence of both."

This is mere clever argumentation because no matter how it is put the fact remains that the wife participated in an action against her husband, she testified against him, she said he was wrong, and the money which the husband had to pay finally ended up in her purse.

But the Superior Court said: "The legal unity of husband and wife and the preservation of domestic peace and felicity between them are desirable things to maintain *where they do not produce injustice to the wife* and where they do not inflict injustice upon out-

siders and deprive them of their legal rights." (Emphasis supplied)

Using that line of reasoning in the case at bar why isn't Janet permitted to sue her husband? Is the result announced by the Majority here not an "injustice to the wife?"

In *Nesbit v. Nesbit & Cas. Ins. Co.*, 102 Pa. Superior Ct. 554, Mrs. Nesbit was injured while working for her husband in his meat market. She brought claim for compensation against him and was awarded compensation. The husband (always the insurance company undoubtedly) appealed, arguing that according to the law of Pennsylvania, a wife may not sue her husband. The Superior Court held that "The compensation act is a departure from the procedure of common law and is not litigation."

We have seen from the cases I have cited and discussed that the Act of 1893 is not a strait jacket. On the contrary, it was intended as a piece of liberating legislation in keeping with the emancipation of womankind which began in earnest in the mid-nineteenth century. This Court, by its decision of today, is arresting that emancipation program in one of its vital phases. The whole trend of the Married Women's Acts has been to assure to married woman complete right to her property as untrammeledly as if she were a feme-sole. Any reasoning which prevents a married woman from obtaining property which was hers before she married is bound to be arbitrary. The Majority says it is bound by a statute but a statute is to be interpreted in the light of the history which gave it birth. The purpose of the Act of 1893 was to enlarge the rights of wives, not to restrict them.

In the case of *Thompson v. Thompson*, 218 U.S. 611, the Supreme Court of the United States was called upon to interpret a statute in the District of Columbia code which provided: "Married women shall have pow-

er to engage in any business, and to contract, whether engaged in business or not, and to sue separately upon their contracts, and also to sue separately for the recovery, security or protection of their property, and for *torts committed against them, as fully and freely as if they were unmarried.*" (Emphasis supplied)

A Mrs. Thompson brought a suit in trespass against her husband claiming damages in the sum of $70,000 because of "diverse assaults upon her person by her husband." The majority of the Court held that Congress could not have intended to break down the common law rule that a wife may not sue her husband in tort. Justices JOHN MARSHALL HARLAN, OLIVER WENDELL HOLMES, and CHARLES EVANS HUGHES, three of the truly great justices in the whole history of the United States Supreme Court, filed a strong dissenting opinion which I believe more closely responded to the demands of law, reason and logic—to say nothing of justice—than the Majority Opinion. Justice HARLAN, supported by Justices HOLMES and HUGHES, said: "If the husband violently takes possession of his wife's property and withholds it from her she may, under the statute, sue him, separately, for its recovery. But such a civil action will be one in tort. If he injures or destroys her property she may, under the statute, sue him, separately, for damages. That action would also be one in tort. If these propositions are disputed, what becomes of the words in the statute to the effect that she may 'sue separately for the recovery, security and protection' of her property? But if they are conceded —as I think they must be—then Congress, under the construction now placed by the court on the statute, is put in the anomalous position of allowing a married woman to sue her husband separately, in tort, for the recovery of her property, but denying her the right or privilege to sue him separately, in tort, for damages arising from his brutal assaults upon her person. I

will not assume that Congress intended to bring about any such result. I cannot believe that it intended to permit the wife to sue the husband separately, in tort, for the recovery, including damages for the detention, of her property, and at the same time deny her the right to sue him, separately, for a tort committed against her person."

Justice HARLAN'S dissenting opinion reflects the modern view and the just view with regard to suits between spouses. Seventeen States have (in varying forms) now adopted the rule favoring interspousal civil litigation. (43 A.L.R. 2d, 647-651.) The position taken in the California *Carver* case, supra, apparently finds favor in England. In *Curtis v. Wilcox* [1948] 2 K.B. 474, 2 All. E.R. 573—CA, it was held that a wife's right of action against her husband for damages arising out of injuries from his negligent operation of an automobile, in an accident which occurred prior to the marriage of the parties, was property within the meaning of the provision of the English Married Women's Act that each married woman should be entitled to have and hold as her separate property and to dispose of, all real and personal property which has belonged to her at the time of marriage or should be acquired or devolve upon her after marriage. Earlier cases which stated a contrary rule were said to be wrongly decided, and not good law. (43 A.L.R. 2d, 643).

I believe that the time has come to tear away the veils of camoflage and show who are the real parties in litigation. I believe that it is wrong for a court to speak of promoting family unity and domestic tranquillity by refusing suits of the character here before us when it is as clear as the sun in the heavens that to permit the litigation is to *increase* domestic tranquillity and family felicity. The payment by the insurance company of the expenses resulting from an un-

fortunate accident, and which it has contracted to pay, will save the family from a crushingly heavy financial burden which could spell tremendous hardship and cause domestic misery. I believe that such litigation not only does not offend against public policy, but, on the contrary, it supports and promotes good public policy. I believe that there is really something *against* public policy in a doctrine which holds that the head of a family may protect the whole world against his negligence except those he loves most and are wholly dependent upon him for maintenance and subsistence.

To say that by means of a perfectly proper lawsuit, moral and ethical in every way, instituted by a wife against her husband, the wife receives money which she needs and which in no way decreases what the husband has; to say that a perfectly decorous trial in a court-room, which resolves an issue which in no way reflects on the moral standards of either party; to say that such a civilized procedure will promote domestic discord and upset family unity (when we know that both parties are satisfied and happy with the result) is simply not the truth. And I believe that the law should represent the truth at all times.

Fiction should be for the novelists and fantasy for the clairvoyants. Labyrinthian and sophistical explanations should be for superannuated philosophers resting in the shade of melancholy maples as the sun of reality disappears into the mystic darkness of conjecture and supposition. In the courts there should be no need for the elaborate and complicated reasoning manifested in *Johnson v. Peoples First Nat. Bk. & Tr. Co.,* supra, and in *Koontz v. Messer,* supra, to achieve justice and in the case of *Parks v. Parks,* to inflict injustice.

The statute in question speaks with irresistible clearness. It says that a married woman may sue to recover her property. Either the Court should accept

its mandate or refuse to accept—and say so. Where a lawsuit is directed against an indemnifier through the medium of another person, the courts should recognize that the indemnifier is the party involved and responsible. The law should aim at substance and not at shadows. The formal defendant in the instant case is Wayne Richard Little but, so far as financial liability is concerned, he is merely the symbol of the insurance company to which he paid money to pay the expenses of everybody he might injure. There is nothing in his insurance policy which says that this indemnification applies to everyone but the girl he loved and is now his wife.

I dissent.