**Clifford G. REMINGTON and James Conwell Welsh, Esq.**

v.

**Kamila F. REMINGTON et al.**

**Civ. A. Nos. 74–2123, 74–2124.**

United States District Court,
E. D. Pennsylvania.

May 5, 1975.

James E. Beasley, Philadelphia, Pa., for plaintiffs.

Thomas R. White, Jr., Philadelphia, Pa., John F. Christie, III, Richard K. Masterson, Norristown, Pa., George P. Williams, III, J. Grant McCabe, III, Philadelphia, Pa., Paul C. Vangrossi, Norristown, Pa., for defendants.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Section 2520 of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, provides, in pertinent part, as follows:

"Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications. . . ."

Presently before the Court are two related cases brought under the above statute and the Pennsylvania anti-wire tapping law, 18 P.S. § 3742.[1] Seeking civil damages as provided in both the Federal and state statutes, Clifford G. Remington and James Conwell Welsh, Esq., have each instituted an individual action against the named defendants, alleging essentially that an electronic wiretapping device was installed upon the telephone line providing service to plaintiff Remington in his home at 311 Keithwood Road, Wynnewood, Pennsylvania, for the purpose of intercepting and recording his private telephone communications. The two complaints further allege that the defendants listened to and used the recordings of plaintiff Remington's conversations with his attorney (plaintiff James Conwell Welsh, Esq.) and other persons without his consent. Defendant Kamila Remington has moved the Court to dismiss Count I of the complaints for failure to state a

---

1. Section 3742 was repealed by Act 1972, P. L.No. 334 § 5, as of June 6, 1973. The applicable law of Pennsylvania is now set forth in 18 Pa.S. §§ 5702–5704.

**900**

claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)·(6).[2]

■ The precise issue raised by the defendant's motion to dismiss is whether under § 2520 a husband may recover damages from his wife who, in concert with others, unlawfully intercepts, records, and thereafter discloses his private telephone communications. In ruling upon a motion to dismiss, all well-pleaded factual averments and every inference fairly deductible therefrom must be considered in the light most favorable to the plaintiff. Miller v. American Telephone & Telegraph Company, 507 F.2d 759, 761 (3rd Cir. 1974). With the above well-established legal principle in mind, the Court notes the operative allegations of plaintiffs' complaints.

During the month of January, 1970, defendants Thomas Kenny, individually and doing business as the Kenny Detective Agency, Kamila Remington and George Remington conspired to install and caused to be installed an electronic wiretapping device upon the telephone line used by plaintiff Clifford Remington in his home at 311 Keithwood Road in Wynnewood, Pennsylvania. The purpose of installing the wiretap device was to eavesdrop upon and intercept the husband's private telephone conversations with his attorney and numerous other persons who contacted or were contacted by the husband over the telephone line in question here. The device remained in place and functioned continuously from January, 1970, until May 12, 1972, when it was discovered and removed by the husband. As to defendants Obermayer, Rebmann, Maxwell & Hippel and High, Swartz, Roberts & Seidel, the complaints allege these law firms, through their respective partners, became aware of the existence of the wiretap and thereafter willfully and maliciously listened to and used the electronic recordings of the husband's telephone conversations without his consent, including the husband's communications with his attorney James Conwell Welsh, plaintiff in Civil Action No. 74–2124.

In support of the motion to dismiss Count I, defendant/wife contends that Congress did not intend § 2520 to be applicable "to that which transpires between a husband and wife during the course of their marriage within the marital home." [3] The principal argument advanced by the defendant is that absent an unmistakable indication of applicability in the legislative history § 2520 should not be construed so as to control or regulate the use of wiretapping devices within the marital domain. Defendant cites the case of Simpson v. Simpson, 490 F.2d 803 (5th Cir. 1974), as authority for the proposition that the subject statute does not provide a husband with a Federal cause of action against his wife who has caused to be installed a wiretap on the telephone line providing service to the husband's home. The Simpson case involved the installation by the husband of a wiretap to the telephone lines located within the marital home for the purpose of intercepting and recording conversations between his wife and another man. After compiling what he considered to be sufficient evidence of the wife's infidelity, the husband played the tapes for a lawyer, on whose advice the wife agreed to an uncontested divorce. The wife then brought an action for damages under § 2520, the statute under consideration here. Based upon an exhaustive and inconclusive review of the legislative history, the Fifth Circuit affirmed the lower court's dismissal of the action, holding that the "statute is not sufficiently definite and specific to create a federal cause of action for the redress of [the wife's] grievances against her former husband." 490 F.2d at 810.

---

2. Defendant Kamila Remington has also filed a motion to stay Count II of the complaints pending a state court determination of the issues raised therein.

3. See, Brief in Support of Defendant Kamila Remington's Motion to Dismiss Count I of the Plaintiffs' Complaints.

While the court in *Simpson* refused to apply § 2520 to the situation where a husband uses electronic equipment to intercept the telephone conversations of his wife, the court expressly limited its decision to the specific facts of that case. In limiting the decision to the particular facts and circumstances of the case before it, the court pointed out that neither a public official nor any private person other than the husband was involved in the interception and that the *locus in quo* did not extend beyond the marital home of the parties. Moreover, the *Simpson* court noted:

" . . . a third-party intrusion into the marital home, even if instigated by one spouse, is an offense against a spouse's privacy of a much greater magnitude than is personal surveillance by the other spouse." 490 F.2d at 809.

■■ In light of the factual allegations set forth in the plaintiff/husband's complaint, defendant's reliance upon *Simpson* is unavailing. If proven, the facts of this case are significantly distinguishable from those upon which the decision in *Simpson* was based. The plaintiff in the instant case has alleged the involvement of a private detective agency and a third party in the installation of the wiretap and the subsequent use of the recordings by two law firms without the knowledge or consent of the plaintiffs. Furthermore, during oral argument heard on the defendant's motion to dismiss, it was revealed to the Court that the recordings had been transported to Florida and introduced as evidence in a Florida State Court proceeding. While Congress apparently did not intend to provide a Federal remedy for persons aggrieved by the personal acts of their spouses committed within the marital home, the Court is unable to conclude as a matter of law that the gross invasion of an individual's privacy by private detective agencies, law firms and other unknown persons, whether instigated by a spouse or not, is not included within the statutory proscription.

Finally, the Court finds support for the conclusion that § 2520 is applicable to the facts of this case by virtue of the inclusiveness of the statutory language. Section 2520 provides, in relevant part, that "any person" whose wire communication is intercepted or used in violation of the Federal wiretap laws shall have a civil cause of action against "any person" who intercepts or causes to be intercepted such communication. Had Congress intended that § 2520 provide civil damages for the violation of the statute by law enforcement or public officials only, suitable restrictions on the availability of suit could have been imposed. Not having done so, the Court concludes that the plaintiffs herein have alleged a valid cause of action against the named defendants under 18 U.S.C. § 2520.

■ The Court now addresses the question of whether the doctrine of interspousal immunity bars plaintiff Remington from maintaining an action against his wife Kamila Remington. The law of Pennsylvania pertaining to interspousal immunity is set forth in 48 P.S. § 111. This statute, enacted in 1893, provides, in relevant part, that a husband may not sue his wife, except in a proceeding for divorce or in a "proceeding to protect or recover his separate property." The asserted basis of the doctrine of interspousal immunity is the public policy of preserving marital unity and tranquility and preventing collusive suits between husband and wife to the detriment of third parties. Johnson v. Peoples First National Bank & Trust Co., 394 Pa. 116, 145 A.2d 716 (1958). Neither of the above-stated policy considerations are present in the case presently before the Court. What minimal marital felicity that existed, if any, between Clifford and Kamila Remington, either during the time in which the wiretap was actually operating or after the discovery of the installation of such wiretap, cannot reasonably be a subject of public interest to the extent that an otherwise valid cause of action would be barred. Furthermore, the present rec-

ord is completely devoid of any indication that the instant litigation is collusive in nature.

The majority of Pennsylvania cases dealing with the doctrine of interspousal immunity have been tort actions based upon the alleged negligence of a spouse. In DiGinolamo v. Apanavage, 454 Pa. 557, 312 A.2d 382 (1973), the most recent Pennsylvania case involving interspousal immunity and the one on which defendant principally relies, the court ruled that a wife could not maintain an action against her husband for damages for personal injuries sustained by her as a result of the husband's alleged negligent operation of an automobile. Similarly, in Meisel v. Little, 407 Pa. 546, 180 A.2d 772 (1962), upon which the decision in DiGinolamo was based, the Pennsylvania Supreme Court held that a wife could not maintain a negligence action against her husband for injuries sustained prior to their marriage. We are not confronted here with an action sounding in tort. Defendant Kamila Remington is alleged to have wantonly and maliciously installed or caused to be installed an electronic wiretapping device in violation of a Federal statute. Consequently, the Court concludes that the doctrine of interspousal immunity does not act as a bar to plaintiff Remington's cause of action against Kamila Remington.

■■ Defendant Kamila Remington has moved the Court to stay consideration of Count II of the complaints pending a state court determination of the questions raised therein. Because the Court will refuse to exercise pendent jurisdiction over the claim based upon the alleged violation of the Pennsylvania anti-wiretapping law, we need not consider the motion to stay. In Mine Workers v. Gibbs, 383 U.S. 715, 716, 86 S.Ct. 1130, 16 L.Ed.2d 218, the Supreme Court noted that pendent jurisdiction is a "doctrine of discretion," based upon considerations of "judicial economy, con-

venience and fairness to litigants." The Court in Gibbs cautioned that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." 383 U.S. at 726, 86 S.Ct. at 1139.

Plaintiffs have commenced an action in the Common Pleas Court of Montgomery County (No. 73–9626), seeking damages for the alleged violation of 18 P.S. § 3742. Were this Court to accept pendent jurisdiction over the identical claim presently being litigated in state court, defendants would be forced to defend against the same claim in both the Federal and state courts. Such a result would not further the interest in "judicial economy" and "fairness to litigants," but would rather be seriously inimical to the considerations upon which the doctrine of pendent jurisdiction is based.

In addition to the fact that the state claim asserted in Count II of the instant complaint is pending in the state court, the statute upon which the claim is based is uncertain, unsettled, and has not been definitively construed by the Pennsylvania Supreme Court. To avoid any possible conflict between Federal and state systems, the state court should be given the opportunity to initially construe the state statute, Star v. Preller, 352 F.Supp. 530 (D.Md.1972). In Samuel v. University of Pittsburgh, 375 F. Supp. 1119 (W.D.Pa.1974), the court found that jurisdiction existed as to plaintiffs' Federal constitutional claim, but refused to exercise pendent jurisdiction over the state claim for the reason that Article I of the Pennsylvania Constitution had not been authoritatively interpreted by the Pennsylvania Supreme Court.[4] The reasoning of the court in Samuel applies equally to the facts of this case. The Court, therefore, will not exercise pendent jurisdiction over state law claims.

4. See also, Moor v. County of Alameda, 411 U.S. 693, 716, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), wherein the Supreme Court affirmed the lower court's refusal to exercise pendent jurisdiction on the basis of the unsettled nature of state law.