**Vera FIELDS, As Parent and Natural Guardian of Taalib Fields, Plaintiff,**

v.

**Anne GRAFF.**

**Civ. A. No. 90–8082.**

United States District Court, E.D. Pennsylvania.

Jan. 31, 1992.

Ivan J. Feiner, Coco, Feiner, & Citron, P.C., Philadelphia, Pa., for plaintiff.

Anthony D. Giampaolo, Dion & Rosenau, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

GAWTHROP, District Judge.

Plaintiff, Vera Fields, the mother of Taalib Fields, brought this action on her own behalf after her son was struck and injured by defendant's motor vehicle on November 29, 1989. Her son's bodily injury claims have been settled, but plaintiff asserts her own right to recover, under several different theories. Defendant has filed a motion to dismiss Counts Two, Three, Four, and Six of plaintiff's complaint. Jurisdiction is by diversity, and Pennsylvania law governs. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

## DISCUSSION

In addressing this motion to dismiss under Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief may be granted, I must accept all well-pleaded allegations as true, and I must construe the complaint liberally in favor of the plaintiff. *Silver v. Mendel*, 894 F.2d 598, 599 (3d Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 2620, 110 L.Ed.2d 641 (1990). A complaint may be dismissed only if it reveals no set of facts that would entitle the plaintiff to relief as a matter of law. *See Angelastro v. Prudential–Bache Securities, Inc.*, 764 F.2d 939, 944 (3d Cir.), *cert. denied*, 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

As to plaintiff's claim in Count Three, negligent infliction of emotional distress, concededly, under *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979) (the successor to *Niederman v. Brodsky, infra* ), the current status of the law requires that one observe contemporaneously the negligently inflicted impact upon one's close relative.

**226**

While plaintiff does not use the term "contemporaneously observe" in her averments, she does claim that she saw the defendant's vehicle "travelling north on Ridge Avenue at a high rate of speed and being driven in a reckless, careless, and negligent manner when it struck her son in front of her, and threw him into the air and over 45 feet away," (Complaint at ¶ 17) and that she was "present at the scene of the collision of Defendant's vehicle and her minor son." (Complaint at ¶ 18).

Since plaintiff claims she saw and heard the impact, she has sufficiently alleged contemporaneous observation to survive a motion to dismiss for failure to state a claim upon which relief can be granted. *See also Neff v. Lasso*, 382 Pa.Super. 487, 555 A.2d 1304, appeal denied, 523 Pa. 636, 565 A.2d 445, 523 Pa. 637, 565 A.2d 445 (1989) (aural perception combined with prior and subsequent visual observance satisfies contemporaneous observance rule). To hold otherwise would call for my reading the pleadings with unacceptable tunnel vision.

■ Secondly, considering plaintiff's claim for punitive damages in Count Six, I find that, plaintiff, having averred "gross negligence, wanton and willful misconduct" in the operation and control of defendant's vehicle, has stated a claim for punitive damages that withstands a motion to dismiss. *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742, 747 (1984) (claim for punitive damages may be based on "wanton" or "willful" conduct) (citing *Chambers v. Montgomery*, 411 Pa. 339, 344–45, 192 A.2d 3⌐5, 358 (1963)).

■ Count Two is a claim for recovery of the parent plaintiff's lost earning capacity and of medical expenses incurred while she tended and nurtured her injured child. The ability to pursue a claim for past and future medical expenses incurred or to be incurred by parents in the care of their injured child is well-settled law. *Olivieri v. Adams*, 280 F.Supp. 428 (E.D.Pa.1968);

*Meisel v. Little*, 407 Pa. 546, 180 A.2d 772 (1962). To the extent that Count Two expands on Count One's specific claim for payment of medical expenses already incurred, plaintiff has stated a claim upon which relief can be granted. As to the claim for the parent's lost earnings for the time she spent and will spend caring for her injured son, although I find no Pennsylvania authority expressly recognizing that portion of the claim, there is caselaw speaking to the need for such nurturing and certain legal consequences of that justifiable need. In *Com. ex rel. Wasiolek v. Wasiolek*, 251 Pa.Super. 108, 380 A.2d 400 (1977), Judge Hoffman, speaking for the court *en banc*, held that the Pennsylvania Equal Rights Amendment notwithstanding [1], it is important that a child of tender years be nurtured, and even if that nurturing means that the mother, for example, is not out in the public, financially remunerative work sector, but, rather, is working at home as a nurturing mother, her public, pecuniary working capacity is not to be held against her in calculating the payment of support by her publicly working spouse. Thus, Pennsylvania law recognized the need to nurture, and the inevitable fact that that need may require, in effect, some economic subsidy. That the need to nurture is occasioned by a child who is immobilized by injury rather than infancy in no way lessens the need, nor its legal recognition. That that need may in turn necessitate the nurturing parent's missing work, thus causing economic loss, is an economic reality which I predict the Pennsylvania Supreme Court would readily recognize. Cf. *Woodson v. AMF Leisureland Centers, Inc.*, 842 F.2d 699 (3d Cir.1988).

■ Count Four is a claim for loss of consortium of a child. While Pennsylvania does allow a parent to sue for the lost value of an injured child's services,[2] *Quinn v. City of Pittsburgh*, 243 Pa. 521, 90 A. 353 (1914) and *Brower v. City of Philadelphia*, 124 Pa.Cmwlth. 586, 557 A.2d 48

**1.** *See* Pennsylvania Constitution, Art. 1, § 28; *Com. ex rel. Spriggs v. Carson*, 470 Pa. 290, 368 A.2d 635 (1977).

**2.** In cases of death, the cost of maintenance, i.e., living expenses, is deducted from the damages awarded for loss of services. *See Incollingo v. Ewing*, 444 Pa. 263, 282 A.2d 206 (1971). Happily, that is not the case here.

(1989), appeal denied, 525 Pa. 604, 575 A.2d 569, it appears that Pennsylvania recognizes no such cause of action for a parent's loss of a child's consortium. One never knows, however, how the common and statutory law of Commonwealth will have evolved by time of trial or thereafter. *See e.g., Congini by Congini v. Portersville Valve Co.*, 504 Pa. 157, 470 A.2d 515 (1983) (expanding the law of dram shop liability to a non-licensee serving a minor); *Niederman v. Brodsky*, 436 Pa. 401, 261 A.2d 84 (1970) (overruling the physical impact rule in Pennsylvania, previously required by *Bosley v. Andrews*, 393 Pa. 161, 142 A.2d 263 (1958), for there to be a cause of action for negligent infliction of mental distress); *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966) (Supreme Court created theory of liability under Restatement (Second) of Torts § 402A, doing so after demurrer was sustained at the trial, apparently *sua sponte*, upon a legal theory not truly pled in the trial court, nor, apparently, then argued to the Supreme Court); *see also Ayala v. Philadelphia Bd. of Education*, 453 Pa. 584, 305 A.2d 877 (1973) (abolishing governmental immunity for municipal and quasi-municipal corporations, paving the way for exceptions to Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541 et seq.); *Falco v. Pados*, 444 Pa. 372, 282 A.2d 351 (1971) (abolishing parent-child immunity); *Flagiello v. Pennsylvania Hospital*, 417 Pa. 486, 208 A.2d 193 (1965) (overruling charitable immunity); Comparative Negligence Act, 42 Pa.C.S. § 7102 (abolishing contributory negligence as a bar to recovery in tort actions).

Returning to the complaint, I note, as to Count Four, in particular, that other jurisdictions have recognized a claim for loss of consortium of a child in certain circumstances, either by way of the legislature or the courts. *See e.g. Pierce v. Casas Adobes Baptist Church*, 162 Ariz. 269, 782 P.2d 1162 (1989); *Dymek v. Nyquist*, 128 Ill.App.3d 859, 83 Ill.Dec. 52, 469 N.E.2d 659 (1984); *Norvell v. Cuyahoga County Hospital*, 11 Ohio App.3d 70, 463 N.E.2d 111 (1983); *Shockley v. Prier*, 66 Wis.2d 394, 225 N.W.2d 495 (1975); *Yordon v. Savage*, 279 So.2d 844 (Fla.1973); Idaho Code § 5–310 (Supp.1976); Iowa code Ann. Rule.Civ.Proc. 8 (Supp.1976); Massachusetts General Laws c. 231 § 85X (1990 ed.); and Washington Revised Code Ann. § 4.24.010 (Supp.1975).

To milk a well-known bovine metaphor of the late Mr. Justice Musmanno, writing, typically, in dissent, the cows have been coming home, and not infrequently. *Bosley v. Andrews, supra* 142 A.2d at 280. One never knows when—or as to what—the Pennsylvania Supreme Court or General Assembly will once again take the bull by the horns. Hence, I am disinclined to fence in plaintiff's theories prematurely, yet before the trial's threshold.

I do recognize that to take this wait-and-see approach to its logical conclusion would serve illogically to conclude whatever useful vitality there is to be found in pre-trial dispositive motions—to dismiss and for summary judgment. But in this particular context it is indeed foreseeable that the law could change at any time. As mentioned, it has in this particular tort context in other states, and Pennsylvania has not of late been shy in climbing aboard the tort-expansion bandwagon.

One could reasonably observe that in today's largely post-agrarian society, the economies of raising teen-aged issue no longer, realistically, consist quite so much of the joys of reaping the fruits of their productive assistance in the field and helping out around the house and barn. Instead, with the unrelenting purchase of Reeboks, Nintendo, and vastly escalating tuition, the greater loss to a parent who loses a child, whether to death or to debilitating injury, is not the legal fiction of the lost income from that child, which, on balance, often does not do a great deal these days to enhance the nuclear family's net worth. Rather, the true loss is, in reality, precisely what the law of Pennsylvania declines so far to recognize: loss of the joy of companionship and pride of parental authorship in having one's burgeoning progeny grow into adulthood—albeit expensively—within one's familial midst. It is true that the recognized approach is arithmetically neater, more convenient for one's

hired economist to calculate on the proverbial blackboard, than the incalculable, intangible loss of one's child whom one utterly loved.

Holmes, however, famously observed that "[t]he life of the law has not been logic: it has been experience." Oliver Wendell Holmes, *The Common Law* at 1 (1881). Under either test, Pennsylvania may well be ready to join the emerging trend and make loss of a child's consortium as cognizable an item of damages as that loss of one's spouse.[3]

In any event, because of the potential for a change in the law before this case runs its course, I shall not today grant the motion. I shall, however, do so just before trial, upon proforma oral reiteration of the written motion before me, should the law in the interim not have evolved.

---

**3.** Actually, having served as one county's family court, back in the late 1970's, I can attest that damages on the loss of spousal consortium can be something of a legal fiction as well. *Cf.* W.S. Gilbert, *The Yeomen of the Guard,* G. Schirmer

Ed. at 158 ("The tower walls were but a thread of silk compared to these conjugal fetters, which I, fool that I am, placed upon mine own hands.").