Henry MERRITT, Plaintiff,

v.

COLONIAL FOODS, INC., Jobemo Corporation, Joel Opatut, Ben Opatut, Morris Opatut, Mary Opatut, Hannah Opatut, and Charles A. Cullye, Jr., Defendants.

Civ. A. No. 79–359.

United States District Court,
D. Delaware.

Sept. 19, 1980.

---

Samuel R. Russell, Biggs & Battaglia, Wilmington, Del., for plaintiff; Alfred V. Greco, and Raymond F. Gregory, New York City, of counsel.

Joseph A. Rosenthal, and Norman M. Monhait, Morris & Rosenthal, Wilmington, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

This civil action was filed on July 24, 1979 by plaintiff Henry Merritt ("Merritt") on behalf of himself and other similarly situated shareholders of defendant Colonial Foods, Inc. ("Colonial"), a Delaware corporation. Plaintiff's complaint alleges viola-tion of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and the rules and regulations promulgated thereunder, with jurisdiction predicated upon Section 27 of that Act, 15 U.S.C. § 78aa, together with pendent claims arising under the laws of the State of Delaware. Presently before the Court is defendants' motion for dismissal or summary judgment or, in the alternative, for a stay of this action.

## BACKGROUND

Plaintiff was a shareholder of Colonial until the merger of Colonial and defendant Jobemo Corporation ("Jobemo") on June 13, 1979. Prior to this merger, defendants Joel, Ben and Morris Opatut and members of their family owned approximately 75% of the shares of Colonial and all the shares of Jobemo.

In 1977, another Colonial shareholder initiated a derivative action on behalf of Colonial in the Superior Court of New Jersey ("New Jersey action"). That lawsuit challenged the manner in which the Opatut brothers had managed Colonial, alleging essentially that corporate affairs were conducted for their personal benefit rather than for the benefit of all Colonial shareholders. Jobemo was organized in December, 1978, for the purpose of acquiring all outstanding Colonial shares not owned by the Opatut family. A tender offer initiated by Jobemo on December 11, 1978, resulted in control by the Opatuts of approximately 80% of Colonial's shares. On June 13, 1979, Jobemo was merged with Colonial. A June 15, 1980, Notice of Merger informed the public shareholders of Colonial that the merger had been effected and advised them that they would receive $3.00 per share for their Colonial stock.

Plaintiff's federal claim asserts that both the December 11, 1978, tender document and the June 15, 1979, notice of merger contained untrue statements of material facts and omitted to state other material facts, all of which operated as a fraud and deceit upon plaintiff and members of the

purported class. By reason of these acts, plaintiff and class members allegedly refrained from taking action to enjoin the merger of Colonial and Jobemo and from otherwise protecting their interests as Colonial shareholders. The remaining counts of the complaint allege that the Delaware disclosure statute, 6 *Del.C.* § 7303, was violated, that the merger was devoid of any valid business purpose, that the terms of the merger were unfair to the minority shareholders, and that individual defendants breached their fiduciary duties as controlling shareholders and directors.

Approximately six months after filing his complaint in the instant case, plaintiff instituted an action in the Delaware Court of Chancery in which he raised claims identical to those asserted here except for the federal securities allegation. Plaintiff states that the Delaware Chancery action was filed merely as a precautionary measure in the event that the instant case were dismissed. Consistent with that position, plaintiff moved in Chancery Court for a stay of all proceedings there pending disposition of the case in this Court. In an August 6, 1980, letter opinion, Vice–Chancellor Brown denied plaintiff's application for a stay and directed that discovery and necessary briefing go forward.

Defendants' pending motion in the instant case seeks summary judgment on the basis that plaintiff's allegations set forth exclusively state law claims which are not cognizable under Section 10(b) of the Securities Exchange Act of 1934. Accordingly, defendants contend that plaintiff's federal claim and pendent state claims should be dismissed. Defendants argue alternatively that consideration of this case should be stayed pending resolution of the Delaware Chancery action.

## THE FEDERAL SECURITIES CLAIM

According to paragraph 23 of the complaint, the December 11, 1978, tender document contained the following misrepresentations and omissions:

(a) The stockholders' derivative action is described as a challenge to the business judgment of the Opatut brothers, when in truth it catalogued several years of self–dealing between Colonial and the Opatut brothers whereby the latter profitted handsomely to the detriment of the former.

(b) It failed to state that a successful conclusion of the stockholders' derivative suit could result in the recovery by Colonial from the Opatut brothers of substantial compensatory and punitive damages, which in turn would result in a material increase in the book value of Colonial's shares.

(c) It also failed to state that included in other relief sought was the removal of all members of the Opatut family from Colonial's board of directors and from all other positions of management and control of Colonial's business and affairs.

(d) No financial statements appear any place in the document.

(e) It failed to mention that either the acceptance of Jobemo's offer to purchase Colonial shares or the freeze–out merger would result in a taxable event for the public stockholders.

(f) It failed to disclose that the proposed merger of Jobemo and Colonial would be completely devoid of any business purpose, and that its true purpose was to freeze–out the public stockholders and thus enable the Opatut brothers to continue to manage and control Colonial for their own personal benefit.

(g) It failed to disclose that the stockholders' derivative action would be rendered moot by the merger, and any benefits achievable by means of that suit would be forever lost.

(h) It failed adequately to describe the appraisal rights available to public stockholders at the time of the contemplated freeze–out merger.

(i) It failed to disclose that the plan to 'go private' was simply a scheme through which the Opatut brothers sought to accomplish indirectly what

would be impossible to achieve through normal corporate processes, and that the merger of Jobemo and Colonial was merely a device to utilize Colonial's funds to finance the elimination of the public stockholders.

The June 15, 1979, notice of merger allegedly repeated these misrepresentations and omissions and, in addition, allegedly failed to disclose that the merger lacked a valid business purpose, that it would moot the New Jersey derivative action, and that the public shareholders were being eliminated at a grossly inadequate price.

Defendants contend that under the Supreme Court's decision in *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), and in particular Part IV thereof, 430 U.S. at 477–80, 97 S.Ct. at 1302–1304, the claims raised by plaintiff do not fall within the ambit of Section 10(b) of the 1934 Act, notwithstanding plaintiff's efforts to cast the allegations in terms of nondisclosures of material facts. Defendants buttress their arguments by pointing to plaintiff's own deposition testimony, in which he is said to have revealed his true intentions of investigating and recovering damages for the alleged mismanagement of Colonial by the individual defendants.

The Court finds plaintiff's deposition testimony to be of little aid in resolving the pending motion. Plaintiff stated therein on several occasions his belief that Colonial's presentation of information to its shareholders was untrue. (E. g., Doc. No. 13A at 68). While this testimony was undercut substantially through questioning by defense counsel, the Court's obligation in considering a motion for summary judgment is clear.

Summary judgment may only be granted if, taking the non–movant's allegations as true *and drawing all inferences in his favor*, the court is convinced from its review of the evidential sources available that no genuine issue as to a material fact remains for trial, and that the moving party is entitled to judgment as a matter of law.

*Scott v. Plante*, 532 F.2d 939, 945 (3d Cir. 1976) (emphasis supplied). While the provisions of Fed.R.Civ.P. 56(e) are designed to pierce the bare allegations contained in the complaint, lingering disputes after consideration of materials outside the pleadings must be resolved in the non–movant's favor. This is especially true in a case such as the one at bar, where the defendants attempt to rely upon an illumination of the allegations in the complaint made by a litigant unskilled in the intricacies of federal securities law. In short, plaintiff's deposition testimony to which the Court has been directed is not as clear cut as defendants suggest.

In *Santa Fe Industries, Inc. v. Green, supra*, the Supreme Court held that allegations of corporate mismanagement or a breach of fiduciary duty, unaccompanied by a claim of deception, misrepresentation, manipulation or nondisclosure, failed to state a cause of action under Section 10(b) of the 1934 Act. 430 U.S. at 474–77, 97 S.Ct. at 1301–1302. In addition, Part IV of *Santa Fe* indicated that "corporate conduct traditionally left to state regulation" was beyond the scope of Rule 10b–5. 430 U.S. at 478, 97 S.Ct. at 1303. However, *Santa Fe* did not expressly resolve the role of Section 10(b) in cases in which this state regulated corporate misconduct is accomplished, aided or concealed by means of communications with shareholders involving misstatements or omissions. Subsequent lower court decisions have grappled with that question.

In *Biesenbach v. Guenther*, 588 F.2d 400 (3d Cir. 1978), the defendants were alleged to have failed to disclose in their communications with shareholders the self–serving purpose behind several transactions which defendants had claimed were in the shareholders' best interest. In upholding the district court's dismissal of the complaint for failure to state a claim under Section 10(b) of the 1934 Act or Rule 10b–5 promulgated thereunder, the Court of Appeals stated:

In effect, appellants are stating that the failure to disclose the breach of fiduciary duty is a misrepresentation sufficient to constitute a violation of the Act. We

refuse to adopt this approach which would clearly circumvent the Supreme Court's holding in *Santa Fe.*

588 F.2d at 402. *See also Rodman v. Grant Foundation,* 608 F.2d 64, 72 (2d Cir. 1979); *Golub v. PPD Corp.,* 576 F.2d 759, 764 (8th Cir. 1978); *Voege v. Magnavox Co.,* 439 F.Supp. 935, 942 (D.Del.1977).

Scarcely more than one year later, in *Healey v. Catalyst Recovery of Pennsylvania, Inc.,* 616 F.2d 641 (3d Cir. 1980), the same court held, over the vigorous dissent of Judge Aldisert, that an allegation by a minority shareholder that an omission of material information in connection with a corporate merger had deprived him of an opportunity under state law to enjoin the merger stated a cause of action under Rule 10b-5. The *Healey* court relied upon "a strong federal interest, evidenced by the entire field of federal securities regulation, in ensuring a proper flow of information between the parties to a securities transaction," 616 F.2d at 646, in determining that Part IV of *Santa Fe* prohibited federal judicial involvement in areas of state law only in cases lacking explicit federal statutory authority. *See also Goldberg v. Meridor,* 567 F.2d 209, 220–21 (2d Cir. 1977), *cert. denied,* 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978).

■ The alleged omissions or misrepresentations in the instant case, listed *supra* at pages 912–913, fall into two distinct categories. Plaintiff's allegations that the tender documents failed to disclose that the proposed merger lacked a valid business purpose (Complaint ¶ 23(f)) and that the plan to go private was a "scheme" to benefit the Opatut family (Complaint ¶ 23(i)), along with the allegations that the notice of merger failed to disclose that the merger had no valid business purpose and failed to disclose that the merger was eliminating the minority shareholders at a grossly inadequate price (Complaint ¶ 27), are precisely the type rejected in *Biesenbach.* Whether the underlying alleged wrongs are characterized as breaches of defendants' fiduciary duties or as other misdeeds actionable under state law, the gravamen of plaintiff's federal claim with respect to them reduces inescapably to a claimed failure to confess one's corporate wrongdoing. As *Biesenbach* makes clear, the Supreme Court's holding in *Santa Fe* is not to be easily circumvented. These alleged nondisclosures fail to state a cause of action under Section 10(b) of the Act and therefore will be dismissed.

■ The remaining allegations of omissions or misrepresentations stand on quite a different footing. Descriptions of the claims and the relief sought in the New Jersey derivative action, of the effect of a tender offer or merger on the continued vitality of that action, of the financial basis for the offer, and of the tax consequences of and appraisal alternatives to acceptance of the offer all have a bearing on the investment decisions of Colonial's public shareholders; i. e., whether to accept the offer, seek an appraisal, or institute proceedings in an attempt to enjoin the merger, as alleged in paragraph 32 of the complaint. As in *Healey,* the plaintiff here has alleged that defendants have engaged in conduct violative of Section 10(b) by omitting or misstating information claimed to be material to the securities transactions in question. Accordingly, the remaining allegations of the first count of the complaint do set forth a federal cause of action, and as to them defendants' motion will be denied.[1]

## THE PENDENT STATE CLAIMS

As noted earlier, the complaint in this case contains one federal claim under Sec-

---

1. This is not to say that the surviving allegations set forth a meritorious claim under Section 10(b). For example, defendants contend that the New Jersey derivative action was fully and accurately described, and that sufficient advice was provided as to financial data, tax consequences and appraisal rights. Defendants also contend that the New Jersey action has not been dismissed as moot following the merger, so that a disclosure of such a consequence would have been inaccurate and misleading. In addition, as to at least some of the allegations, obvious questions of materiality emerge. Resolution of these questions, however, must await fuller briefing and argument by the parties.

tion 10(b) and four pendent state law claims. The ongoing Delaware Chancery action is considering verbatim recitations of the four pendent claims. The relief sought in the Chancery action is identical to the relief sought here, and is predicated on a determination that the merger of Colonial and Jobemo was accomplished in a manner considered unfair to Colonial's public shareholders under Delaware law. Monetary relief to plaintiff and other purported class members will flow from any such unfairness in the terms of the merger, and not from a deprivation of the opportunity to enjoin the merger, which is the damage said to be attendant to the alleged federal law violation.[2] In short, meaningful relief to plaintiff and other Colonial shareholders hinges on issues of Delaware law.

■ "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; . . ." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). *See also Schultz v. Cally,* 528 F.2d 470, 476 (3d Cir. 1975); *Aldens, Inc. v. Packel,* 524 F.2d 38, 52 (3d Cir. 1975), *cert. denied sub nom. Aldens, Inc. v. Kane,* 425 U.S. 943, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976). Pendent jurisdiction requires a two–step inquiry: whether the district court has the power to adjudicate the pendent claim and, if so, whether that power should be exercised. Having determined that plaintiff states a colorable Section 10(b) claim, the first inquiry is answered affirmatively. As to the second, the Court concludes that the pendent jurisdiction power should not be exercised.

Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

*United Mine Workers of America v. Gibbs, supra,* 383 U.S. at 726–27, 86 S.Ct. at 1139 (footnote omitted). *See also* 13 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3567 at 453 (1975 ed.). Pendent state law claims were dismissed despite the presence of a colorable federal claim, in *Remington v. Remington,* 393 F.Supp. 898, 902 (E.D.Pa.1975). In *Remington,* as here, the pendent state claims were the subject of a concurrent lawsuit in state court. The Pennsylvania statute on which the state claims were based was found to be "uncertain" and "unsettled," 393 F.Supp. at 902, a difficulty not encountered here. The instant case, on the other hand, presents a situation in which issues of state law so thoroughly predominate, especially in the "comprehensiveness of the remedy sought," that it can fairly be said that the federal claims are ancillary to the pendent state claims, and are employed merely to bring the state claims within the jurisdiction of a federal court.[3]

A similar determination by a district court was overturned in *Knuth v. Erie Crawford Dairy Cooperative Assoc.,* 395 F.2d 420 (3d Cir. 1968), *cert. denied,* 410 U.S. 913, 93 S.Ct. 966, 35 L.Ed.2d 278 (1973). The district court had dismissed plaintiff's federal claim for failure to state a cause of action, and had then dismissed the pendent state claim on the grounds that the federal claims were insubstantial, that the state claims' subject matter was inappropriate

---

2. The merger of Jobemo and Colonial was accomplished pursuant to 8 *Del.C.* § 251, which requires the approval of a simple majority of the voting shares of each corporation. Since the Opatuts control 100% of the Jobemo stock and 80% of the Colonial stock, shareholder approval of a second merger attempt would be assumed if the first merger were set aside because of federal securities law violations. The

"fair return" on the Colonial stock sought by plaintiff (Doc. No. 13A at 92), i. e., a sum greater than $3.00 per share, could be required only if plaintiff prevails on his state law claims. In short, disposition of the pendent state claims completely controls whether plaintiff will obtain the remedy he seeks.

3. *See* note 2 *supra.*

for pendent jurisdiction, and as a matter of the district court's discretion. The Court of Appeals reversed the dismissals of both the federal claim and the pendent state claims, concluding as to the pendent claim that the district court lacked an acceptable basis for such an exercise of discretion where its finding that state law issues predominated was based solely on the amended complaint. 395 F.2d at 427. In contrast, the determination in the instant case is made in the context of a motion for summary judgment in which the Court is aware of the identical state law claims currently pending in the Delaware Chancery action. As Vice–Chancellor Brown's August 6, 1980, letter opinion indicates, that court is prepared to proceed with the claims before it in an expeditious fashion. Accordingly, I conclude that judicial economy, convenience and fairness to the litigants are best served by dismissal without prejudice of the pendent state law claims in order that consideration of those issues can proceed in the Delaware Court of Chancery. *Cf. Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187, 196–97 (3d Cir. 1976).

### THE REQUEST FOR A STAY

The court turns finally to defendants' request for a stay of this action pending resolution of the proceeding in Delaware Chancery Court. Defendants contend this Court's authority to enter such a stay was confirmed by the plurality opinion in *Will v. Calvert Fire Insurance Co.,* 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978), and by the subsequent consideration of that case by the Seventh Circuit Court of Appeals in *Calvert Fire Insurance Co. v. American Mutual Reinsurance Co.,* 600 F.2d 1228, 1233 (7th Cir. 1979). Plaintiff argues that neither of those decisions upsets the rule in this Circuit that claims over which a federal court exercises *exclusive* jurisdiction, such as the Section 10(b) claim presented here, may not be stayed pending disposition of related state proceedings. *See Cotler v. Inter–County Orthopaedic Association, P.A.,* 526 F.2d 537, 542 (3d Cir. 1975). Resolution of this question is unnecessary, however, in light of the dismissal of plaintiff's state claims and certain aspects of plain-

tiff's federal claim. Since there is no longer an overlap between the claims pressed in the Chancery action and those remaining here, an exercise of discretion to stay this proceeding, if authorized at all, is unwarranted, and defendants' motion will be denied.

Submit order on notice within ten days.