**TBK PARTNERS, Plaintiff,**

v.

**Robert T. SHAW, et al., Defendants.**

**Civ. A. No. C 82–0695–L(A).**

United States District Court,
W.D. Kentucky.

Jan. 5, 1988.

694

Galen J. White, Jr., Donald W. Darby, Boehl, Stopher, Graves & Deindoerfer, Louisville, Ky., William Klein, II, Ira A. Finkelstein, Owen D. Kurtin, Stuart Wechsler, Edward Labaton, Goodkind, Wechsler & Lebaton, New York City, for plaintiff.

Robert L. Maddox, Robert C. Ewald, H. Alexander Campbell, Louisville, Ky., Rod-

ney Moore, Moore & Peterson, Dallas, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

ALLEN, Senior District Judge.

This action is before the Court on defendants' motion for summary judgment. Plaintiff, TBK, brought this action claiming securities fraud. Specifically, plaintiff claims defendants violated sections 11 and 12(2) of the 1933 Act which make unlawful any material omissions or misstatements in a registration statement or in an offer or sale of securities. Plaintiff also alleges violation of sections 10(b) and 14(a) of the 1934 Act. These statutory provisions apply, respectively, to the purchase or sale of a security and to the solicitation of proxies, and make it unlawful to employ any device or scheme to defraud, or to engage in any act, practice or course of business which operates or would operate as a fraud or deceit.

The plaintiff has also claimed a violation under 18 U.S.C. § 1962 (RICO statute) alleging the individual defendants conducted and participated in the affairs of defendant corporation (I.C.H.) and of the subsidiaries through a pattern of racketeering. Plaintiff claims the individual defendants' conduct in manipulating the Merger Exchanges for all of the subsidiaries is evidence of racketeering.

### I. *Factual Background.*

TBK Partners, a New York partnership, originally brought this action against Robert T. Shaw ("Shaw"), C. Fred Rice ("Rice"), Consolidated National Corporation ("CNC"), Independence National Corporation ("INC"), American Consolidated Corporation ("ACC"), Western Pioneer Life Insurance Company ("WPLIC"), and I.C.H. Corporation ("ICH"), alleging violations of the Securities Act of 1933, the Securities Exchange Act of 1934, and common law fraud and breach of fiduciary duty. In the complaint, plaintiff alleges that Shaw and Rice control ICH and CNC, and that through CNC, Shaw and Rice control INC, ACC, and WPLIC. Plaintiff also alleges that through the CNC network of corporations, Shaw and Rice acquired varying degrees of control over All American Assurance Company ("AAA"), American Commonwealth Financial Corporation ("ACFC"), Bankers Union Life Insurance Company ("BULIC"), Chase National Life Insurance Company ("CNLIC"), Founders Security Life Insurance Company ("FSLIC"), HCA, Inc. ("HCA"), Modern American Life Insurance Company ("MALIC"), Modern Security Life Insurance Company ("MSLIC"), National Heritage Management Corporation ("NHMC"), and Progressive National Life Insurance Company ("PNLIC").

Plaintiff alleges that Shaw, through ICH, offered to merge AAA, ACFC, BULIC, CNLIC, FSLIC, HCA, MALIC, MSLIC, NHMC, and PNLIC with ICH. Shaw allegedly registered with the Securities and Exchange Commission 2,620,254 shares of ICH stock to be exchanged for stock in the ten target companies. Allegedly, Shaw then sent each stockholder of the target companies a three-part prospectus. Plaintiff also claims that Shaw sent ICH stockholders a proxy statement with parts of the prospectus attached, calling for a meeting to increase ICH's authorized common stock. In this regard, Plaintiff alleges that the prospectus was misleading because Shaw either omitted or misrepresented material facts. Plaintiff claims that these acts depressed the fair value of the stock of the target companies.

Plaintiff further alleges that they were "forced" or "coerced" into selling their stock at an unfair and undervalued price. At the date of the stockholders meeting of the ten target companies, plaintiff claims to have 'beneficially' owned stock in MSLIC, CNLIC, MALIC, and PNLIC.

Plaintiff sought certification of a class action and this Court in an order entered on October 14, 1983, approved two classes: (1) all minority stockholders (and their successors) of the common stock of PNLIC who received the ICH "Prospectus/Proxy Statement" relating to the shares of ICH stock to be exchanged for their shares of subsidiary common stock and who exchanged

their stock for shares of ICH stock; and (2) all minority stockholders (and their successors) of the common stock of CNLIC who received the ICH "Prospectus/Proxy Statement" relating to the shares of ICH stock to be exchanged for their shares of common stock and who sold their stock after receipt of the "Prospectus/Proxy Statement" but before the merger with ICH. The Court declined to certify the MALIC and MSLIC classes because of the possibility of inconsistent judgments leading to possible class conflicts if those classes were also certified in pending actions in Delaware state court.

In an order entered on March 5, 1986, this Court granted plaintiff leave to amend its complaint and to assert a claim under the Racketeer Influenced and Corrupt Organization Act ("RICO"). In this regard, plaintiff seeks to represent all shareholders of ICH who, as minority shareholders in the ten subsidiaries, received ICH shares as a result of the merger. Further plaintiff sought to drop all of the original corporate defendants except ICH. In addition, plaintiff asserts new claims in "RICO" and negligent misrepresentation.

## II. *Disputed Facts.*

Plaintiffs claim the following facts are in dispute between the parties:

A. Selection of Independent Directors for the Special Committee.

The defendants state they wanted to establish a special committee to select an independent investment banker to be retained by the subsidiaries who would recommend exchange values and to select a law firm to represent public shareholders for the proposed transactions. Defendants claim ICH asked the Board of Directors of each of the most important subsidiaries involved to select a representative to serve on the committee. Defendants claim the existence of a special committee with independent directors would alleviate any possible conflict of interest between ICH and the subsidiaries.

However, the plaintiff alleges that the "independent" status of the selection committee was merely illusory. Plaintiff claims there are no facts on the record to support defendants' statement that ICH asked the Board of Directors of each of the most important subsidiaries to chose a representative for the special committee. Plaintiff specifically alleges that defendant Shaw, upon advice from an attorney named Moore, personally picked three of the committee members. Two committee members, Parker and Peeples, were clients of attorney Moore, and a third committee member, Wiley, was a personal friend of Moore. Also, plaintiff alleges Peeples could not be independent since he was employed by a major ICH shareholder. Further, plaintiff claims Shaw did not get prior approval of his selection of special committee members from the subsidiary boards.

B. Selection of an Independent Investment Banker.

Plaintiff alleges that the selection of Shearson as the independent banker was contrary to the prospectus. Defendants state the special committee heard presentations by Shearson as well as Stephens. The committee members had two or three conference calls regarding a recommendation for Shearson and ultimately decided upon Shearson. Plaintiff claims Shearson was selected by attorney Moore, with no alternative given to the special committee. Plaintiff asserts that while the prospectus indicates that the date of the selection of Shearson by the committee was May 12, 1982, Mr. Moore gave information to a reporter for the Wall Street Journal about Shearson's selection one month before the stated selection date. This resulted in a Wall Street Journal article dated April 12, 1982.

Plaintiff claims that after Shearson was selected he held no meetings with the special committee or with the attorney chosen to represent the shareholders. Further, plaintiff claims Shearson used ranges of value rather than specific values allowing defendant Shaw to manipulate exchange ratios and to remain within a previously established cap on the number of ICH shares to be provided. The defendants assert that no established cap existed.

### C. Selection of Independent Counsel for Minority Shareholders.

The plaintiff claims that the law firm of Vinson & Elkins was not retained by the special committee. The individual attorney (Whilden) from Vinson & Elkins was introduced by attorney Moore to members of the special committee as their counsel. Plaintiff further claims that while representing the minority stockholders, Whilden made no effort to obtain the best possible price for exchange.

### D. Issues Omitted from the Prospectus.

Plaintiff alleges that the prospectus for each subsidiary did not disclose the acquisition prices of the other subsidiaries involved in the merger; yet all the prices were disclosed to ICH shareholders. Furthermore, the shareholders were not informed that Shearson's ranges for five of the subsidiaries were below the actual acquisition prices paid by ICH and that the takeover prices were lower than merger book value prices. Also, the prospectus did not declare the number of ICH shares to be exchanged for the minority shares in each of the other nine subsidiaries.

Plaintiff also contends that defendants did not disclose the relationship between the cap on the number of shares and the exchange ratios involved in the mergers. Defendants assert that the cap was merely an estimated range of reasonable value of the companies.

Further omitted from the prospectus is the $90 million tax benefit defendants would receive if the mergers occurred before October 28, 1982.

Lastly, the shareholders were not made aware that one of the ten subsidiaries in the merger was involved in litigation at the time of the proposed merger.

### III. *Discussion.*

Federal Rules of Civil Procedure 56(e) states that summary judgment may be granted if there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See *Valente v. PepsiCo., Inc.*, 454 F.Supp. 1228 (D.Del.1978); *Rains v. Cascade Industries, Inc.*, 402 F.2d 241 (3d Cir.1968).

However, if any disputed matters of fact exist relating to the elements of liability, summary judgment is not appropriate.

The defendants claim they are entitled to a summary judgment because plaintiff bases its claim on the unfairness of the merger rather than upon defendants' failure to disclose. Defendants state the standard for adequate disclosure is full disclosure; however, there is no duty of fairness. Defendants assert that an allegation of deception must allege more than a mere failure to disclose unfairness. Further, mere unfairness of price is not a violation of SEC regulations. Defendants claim the proxy statements included a fair discussion of the relationships among all parties, the background of ICH's decision to propose the merger, the business reasons, and the selection of Shearson. Further, Shearson's evaluation included:

1. Market values of each subsidiary stock for each quarter.
2. Audited financial statements of each subsidiary.
3. Types of insurance in force.
4. Comparative per share data for ICH and each subsidiary.
5. Capitalization of each subsidiary.
6. Other financial data.

Defendants assert that Shearson's evaluation contained enough information and financial data to permit every shareholder to use his own judgment in deciding upon the proposed merger.

The plaintiff argues that the defendants did not disclose material facts surrounding the proposed merger. (The disputed facts have been previously listed). As a result of the misstatements and omissions, the minority shareholders were not provided with enough data for them to make a well informed decision.

As stated in *Valente v. PepsiCo, Inc.*, 454 F.Supp. 1228, 1236 (D.Del.1978), a plaintiff must prove four elements when alleging damages for violations of 10(b) and 10(b)–5.

The violation must be in connection with the purchase or sale of a security. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). The alleged misrepresentations or omissions must be material. *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153–154, 92 S.Ct. 1456 [1472], 31 L.Ed.2d 741 (1972); *Rochez Bros., Inc. v. Rhoades*, 491 F.2d 402, 407–408 (3d Cir.1974). There must be a causal relationship between the alleged violation and the alleged injury. *Affiliated Ute, supra*, 406 U.S. at 154, 92 S.Ct. 1456 [at 1472], *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 495 F.2d 228, 239 (2d Cir.1974); *Halle & Stieglitz v. Empress International, Ltd.*, 442 F.Supp. 217, 223 D.Del.1977). Furthermore, a defendant must act with some form of scienter, above and beyond mere negligence. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

A. "In Connection With."

The first element, which requires that alleged violation be in connection with the purchase or sale of a security, does not appear to be in dispute. Therefore, it does not need not to be addressed.

B. Materiality.

The second requirement, materiality, is of great importance in this case since the plaintiff claims it did not have any way of knowing the consequences of the merger due to the omission of certain information.

The standard for materiality was established by the Supreme Court in *TSC Industries v. Northway*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976):

An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote. This standard ... does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote. What the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.

Further, the Supreme Court stated that in assessing whether summary judgment is appropriate, the Court must bear in mind that the determination of materiality involves "delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him, and those assessments are peculiarly ones for the trier of fact." *Id.* at 450, 96 S.Ct. at 2133.

The court in *Valente, supra*, interpreted the Supreme Court in *Northway* as suggesting that courts "should be cautious in taking a question of materiality away from the trier of fact by finding that an omission is material or not material as a matter of law." 454 F.Supp. 1228, 1238.

The Supreme Court in *Northway* also stated "in view of the prophylactic purposes of the rule and the fact that the content of the proxy statement is within management's control, it is appropriate that [any] doubt be resolved in favor of those the statute was designed to protect." 426 U.S. 438, at 448, 96 S.Ct. 2126, at 2132. See also *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), *Fradkin v. Ernst*, 571 F.Supp. 829 (N.D.Ohio 1983).

1. Selection of Special Committee.

█ The plaintiff claims the committee was not independently selected, and has shown by discovery they did not formally meet again after the first short meeting. The materiality of a false or misleading disclosure regarding the actions of a corporate board or committee was considered in *SEC v. Falstaff Brewing Corp.*, 629 F.2d 62 (D.C.Cir.1980). The *Falstaff* case involved a proxy statement which referred to an audit committee that never functioned. The district court concluded that the mention of the audit committee in the proxy

statement "created the false impression that the board of directors was exercising careful oversight of the company's finances." *Id.* 629 F.2d at 75. The Court of Appeals affirmed, stating:

> The existence of a committee implies a structured investigation and analysis of a company's fiscal welfare. Informal procedures may be adequate, but formal entities such as committees create at least the impression of great care and precision through detailed review and oversight. Stating that an audit committee, with its implication of careful oversight, existed when it did not thus is misleading.

The court in *Fradkin, supra,* found the *Falstaff* court's reasoning persuasive. The court stated when disclosures warrant a reasonable investor to believe that the Board of Directors had taken formal action including deliberate consideration of a plan, and when in fact very little Board oversight and no discussion took place, the disclosures were materially false and misleading. *Fradklin,* 571 F.Supp. 829 at 846.

In the case at bar, the disclosed existence of a special committee to select an investment banker and counsel to represent minority shareholders creates a substantial likelihood that a reasonable shareholder would consider the actions of the special committee important in a voting decision concerning the merger proposal.

2. Selection of an investment banker.

■ Material in the record indicates the selection of the investment banker (Shearson) was contrary to the prospectus and in fact Shearson was not independent. Plaintiffs contend that Shearson was hand picked by Moore, defendant Shaw's attorney, and Moore gave no other candidates to the board of directors. Further, the Wall Street Journal released an article naming Shearson as the selected banker one month before the stated selection date.

Defendants assert that Stephens, another investment banker, gave a presentation; however, Shearson was more impressive.

The Court concludes that the question of materiality of the independent selection of Shearson is not appropriate for summary judgment. Whether Shearson's selection was independent is a question to be resolved by the trier of fact.

3. Selection of "Independent" Counsel.

■ The plaintiff also claims that the counsel retained to represent the minority shareholders was not selected by the special committee and made no effort to obtain the best price for exchange in the merger.

The Court concludes this is also a question to be resolved by the trier of fact.

4. Disclosure of all the subsidiary prices.

■ The prices for five of the subsidiaries were not made known to the shareholders and plaintiff claims the take over prices were below merger book value.

*Radol v. Thomas,* 534 F.Supp. 1302 (S.D. Ohio 1982) states that Rule 13e–3 "merely requires that an opinion be given and the material factors on which it is based be disclosed." *Id.* at 1316. Subsequent case law following the *Radol* rationale held disclosure of company values substantially in excess of book value or net asset value were not necessary. *Howing Co. v. Nationwide Corp.,* 625 F.Supp. 146, 155 (S.D. Ohio 1985). However, the court in that case was persuaded by the fact that "independent outside auditors reviewed the financial information contained in the proxy statement and opined that 'such financial statements present fairly the financial position ... in conformity with generally accepted accounting principles.'" The court was further persuaded by expert testimony that the information was accurate and not misleading.

It is important to remember the purpose of a proxy statement which is to provide the shareholder with enough information to help him draw his own conclusions in deciding how to vote his shares. In reviewing the entirety of the plaintiff's allegations and considering the fact that the "independence" of the special committee, the investment banker, and the retained counsel is questioned, it appears the accuracy of the financial positions of the subsidiaries is a question for the trier of fact.

### 5. Relationship of the cap to the exchange ratios.

■ Plaintiff has shown by material in the record the defendants did not disclose the relationship of the $45 million cap placed on the shares to the exchange ratios in the merger. Plaintiff admits the defendants disclosed the existence of the a cap but claim the cap was a means for Shaw to manipulate the shares. Defendants claim there was no "magic" to the cap, and that it merely represented an estimated range of reasonable value of the companies. The plaintiff asserts that whether the cap was or was not "magic" is a question of fact.

It appears the plaintiff complains the prospectus did not disclose the effect the cap would have upon the transaction. Courts have held:

> As long as minority shareholders are not misled about the actual terms of a transaction, it is not deceptive for corporate insiders to fail to characterize the transaction or their own role with perjorative nouns or adjectives or fail to draw adverse inferences from the facts disclosed. A reasonable shareholder may be required to draw his or her own inferences, whether they may be positive or negative in the circumstances of a particular case.

*Issen v. GSC Enterprises, Inc.,* 508 F.Supp. 1278, 1290 (N.D.Ill.1981). See also *Goldberg v. Meridor,* 567 F.2d 209, 218 n. 8 (2d Cir.1977), *cert. denied,* 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978); *Biesenbach v. Guenther,* 588 F.2d 400 (3d Cir. 1978); *Golub v. PPD Corp.,* 576 F.2d 759, 765 (8th Cir.1978); *Merritt v. Colonial Foods, Inc.,* 499 F.Supp. 910 (D.Del.1980); *Klamberg v. Roth,* 473 F.Supp. 544 (S.D.N. Y.1979); *Hundahl v. United Benefit Life Insurance Co.,* 465 F.Supp. 1349 (N.D.Tex. 1979).

It has further been stated that:

> When the nature and scope of a transaction are clear, it is not necessary for the corporate instigators to characterize the various effects of the transaction as favorable or unfavorable or to evaluate its overall effect; such characterization is a matter of judgment, not fact.

*Alabama Farm Bureau Mutual Casualty Co., Inc. v. American Fidelity Life Insurance Co.,* 606 F.2d 602, 611 (5th Cir.1979).

The question here is whether the nature and scope of the transaction was made clear. The standard for materiality requires "a showing of a substantial likelihood that under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder." *Northway,* 426 U.S. 438, at 449, 96 S.Ct. 2126, at 2132. In other words, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information." *Id.* It appears that the transaction was not clear in this case. The fact that shareholders knew a cap existed probably was not in itself enough information for a reasonable shareholder to draw inferences concerning the effect a cap may have upon the merger when the prices of each subsidiary were not provided.

### 6. Tax Benefits of defendants from the merger.

■ Plaintiff has shown by discovery that defendants did not disclose in the proxy materials the $90 million tax benefits defendants would receive as a result of the mergers occurring on or before October 28, 1982. "Disclosure of the benefits a controlling shareholder will gain from an amalgamation or merger may be necessary in certain cases." *Valente,* 454 F.Supp. 1228 at 1245; See also, *Kohn v. American Metal Climax,* 458 F.2d 255, 265 (3d Cir.1972).

Disclosure of tax benefits prompts shareholders to give closer scrutiny to the transaction.

While shareholders may be generally aware that a corporation merging with another will derive some benefit, a $90 million benefit appears to be unusual in nature and could be an important factor in the shareholders' decision making process. "[R]easonable minds could differ as to whether the details of the benefits which [defendants] would receive would be important in a reasonable shareholders' decision whether or not to tender his shares. The question

is more properly left to the trier of fact." *Valente, supra,* at 1245.

### 7. One subsidiary involved in pending litigation.

██ Plaintiff claims defendants did not adequately disclose the fact that one of the ten subsidiaries was involved in pending litigation. American Commonwealth Financial Corp. was involved in and action alleging a Rule 10b–13 violation.

Plaintiff did not allege that defendants did not provide this information in the proxy materials. However, they do register a complaint concerning the location of the information. Plaintiff states the litigation information was not in the first section of the proxy materials but rather in section II under "General Information." It is important to note the General Information section also contained a sublisting "Litigation." Plaintiff claims this information was not placed in the location justified by its importance.

It appears that the reasonable shareholder was provided with information concerning the litigation and could draw his own conclusions regarding the importance of the pending litigation in deciding how to vote.

### C. *Causation.*

The causation requirement has been described by the Supreme Court in this manner:

> Where there has been a finding of materiality, shareholder has made a sufficient showing of causal relationships between the violation and the injury for which he seeks to redress if, as here, he proves that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction.

*Mills v. Auto–Lite Co.,* 396 U.S. 375, 384–385, 90 S.Ct. 616, 621–622, 24 L.Ed.2d 593 (1970). Therefore, as stated by the court in *Fradkin, supra,* at 842, "if the proxy statement contains a material misstatement or omission, the causation requirement is met."

### D. *Scienter.*

██ The Supreme Court has held that a private cause of action for damages under 10(b) and 10(b)–5 will not be sustained in the absence of an allegation of scienter which is the "intent to deceive, manipulate or defraud." See *Ernst & Ernst v. Hochbelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

The court further stated that use of the terms "manipulative" and "deceptive" appears to mean that the provision in 10(b) "was intended to proscribe knowing or intentional misconduct ..." *Id.* at 197, 96 S.Ct. at 1383. Plaintiff cannot claim mere negligence to support a 10(b) action; however, the court did not rule on whether reckless behavior would be sufficient to support the cause of action. See *Hochbelder, supra,* 96 S.Ct. at 1381; see also *Valente, supra,* at 1249.

Several courts have concluded that a showing of reckless behavior is sufficient to meet the scienter requirement of section rule 10(b)(5). See *Coleco Industries, Inc. v. Berman,* 567 F.2d 569 (3d Cir.1977); *Nelson v. Serwold,* 576 F.2d 1332 (9th Cir. 1978); *Rolf v. Blyth, Eastman Dillon & Co., Inc.,* 570 F.2d 38 (2d Cir.1978); cases cited in *Coleco, supra,* 567 F.2d at 574 n. 6. See also, *McLean v. Alexander,* 420 F.Supp. 1057 (D.Del.1976).

The Seventh Circuit quoted with approval an Oklahoma district court opinion defining reckless conduct as

> highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.

*Sundstrand Corp. v. Sun Chemical Corp.,* 553 F.2d 1033, 1045 (7th Cir.1977), quoting *Franke v. Midwestern Oklahoma Development Authority,* 428 F.Supp. 719 (W.D.Okla.1976).

Plaintiff argues that the prospectus was specifically designed to deflect the attention of the shareholder away from the detriments of the transaction. Plaintiff claims defendants knowingly created a charade,

through omissions and misleading statements, with the intention to deceive the shareholders.

In this case, the evidence could be viewed as giving an appearance of knowledge and reckless conduct on the part of the defendants. The shareholders were given the impression that an impartial group would oversee the details of the transaction. However, the totality of the facts in dispute could be viewed as creating the appearance that defendants acted on their own initiative. As stated by the court in *Valente, supra,* at 1251,

> Whether an omission is 'highly unreasonable', and whether an omission presented a danger of misleading investors that was so obvious that a defendant must have been aware of it, are matters which depend largely on an evaluation of the factual context of a case and an evaluation of what a reasonable person could be expected to do. A jury is particularly suited to make this type of evaluation.

Given the totality of circumstances in this case, it appears that there are genuine disputes of material fact, and these issues should be determined by the trier of fact.

### IV. *RICO Allegation.*

■ Defendants claim in their motion for summary judgment that plaintiff did not have a viable claim under the RICO statute because they cannot establish a "pattern of racketeering activity." Defendants assert ICH was engaged in a single plan to acquire the shares of stock in the ten subsidiary companies. Plaintiff argues a "pattern" of racketeering activity exists by virtue of the numerous merger exchanges involving 53,000 public shareholders of ten different public insurance companies. Plaintiff further argues defendants' use of the telephone (for calls among and between company officers, directors, lawyers and investment bankers) and the mailing of ten separately identified proxy statements to the public shareholders is sufficient to constitute a "pattern" of racketeering activity. A "pattern" of racketeering activity "requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5).

Although it has not ruled on the issue, the Supreme Court has stated "The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern." *Sedima, S.P.R.L. v. Imrex Company, Inc.,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). Further, according to the legislative history, the separate acts must also reflect "continuity plus relationship" in order to constitute a pattern. *Id.*

Almost every circuit has considered the question of proper standards for deciding a pattern of racketeering activity and has "struggled to implement *Sedima's* directive to develop a meaningful concept of pattern based on continuity plus relationship." *Torwest DBC, Inc. v. Dick,* 810 F.2d 925, 928 (10th Cir.1987).

The Eighth Circuit has established an absolute requirement of multiple schemes or episodes. See *Superior Oil Co. v. Fulmer,* 785 F.2d 252 (8th Cir.1986).

However, other courts have rejected this requirement.

> As long as more than one racketeering activity is sufficiently alleged, a "pattern" may exist even if the racketeering activities contemplate a single scheme. In its discission of "pattern," neither RICO nor its legislative history refer to "pattern" in terms of "scheme." The statute refers to "acts," two or more of which must be "related" and in "continuity" to constitute a "pattern."

*Federal Deposit Ins. Corp. v. Kerr,* 637 F.Supp. 828, 835 (W.D.N.C.1986). See also, *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 51 (2d Cir.1987) (pattern of racketeering activity does not require multiple episodes); *Bank of America v. Touche Ross & Co.,* 782 F.2d 966, 971 (11th Cir.1986) (nine mailings and uses of wire over three year period in furtherance of a single scheme are sufficient); *R.A.G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350, 1355 (5th Cir.1985) (two acts of mail fraud in single scheme dealing with one transaction, if related, are sufficient under *Sedima.*

Defendants further argue that ICH cannot be held liable as both an "enterprise"

and as a "person." The circuits are split on this issue. In *United States v. Hartley,* 678 F.2d 961, 990 (11th Cir.1982), the Eleventh Circuit held that the corporation at the center of a fraudulent scheme could be both the person and the enterprise under section 1962(c). The Fourth Circuit held precisely the opposite in *United States v. Computer Sciences Corp.,* 689 F.2d 1181, 1190–91 (4th Cir.1982).

The court in *Haroco v. American Nat. B & T Co. of Chicago,* 747 F.2d 384 (7th Cir.1984) examined in detail whether the same corporation may be both the liable "person" and the "enterprise" under section 1962(c). The court considered the statutory language and the policies of RICO. The court decided that a sensible balance among the conflicting policies should be taken into account as different situations arise. *Id.* at 401. "The enterprise may play the various roles of victim, prize, instrument or perpetrator. The RICO liability of the enterprise should depend on the role played." The court further states that "the corporate enterprise should be liable where it is the perpetrator, or the central figure in the criminal scheme. In that situation, the corporate deep pocket should certainly be subject to RICO liability." *Id.* At the same time, "the corporation-enterprise should not be liable when the corporation is itself the victim or target, or merely the passive instrument for the wrongdoing of others." *Id.*

The court in *Haroco* concluded the conflicting policies of RICO could be resolved sensibly and in accord with the statutory language simply by reading subsection (c) together with subsection (a). Subsection (c) states the "enterprise" and the "person" are distinct. However, a corporation-enterprise may be held liable under subsection (a) when the corporation is the perpetrator. *Id.* at 402. The court stated a "person," which could be a corporation-enterprise, acts unlawfully if it receives income directly or even indirectly from a pattern of racketeering activity in which the "person" participated and if the income is used by that "person" in an enterprise affecting commerce. The *Haroco* court further concluded,

Subsection (a) does not contain any of the language in subsection (c) which suggests that the liable person and the enterprise must be separate. Under subsection (a), therefore, the liable person may be a corporation using the proceeds of a pattern of racketeering activity in its operations. This approach to subsection (a) thus makes the corporation-enterprise liable under RICO when the corporation is actually the direct or indirect beneficiary of the pattern of racketeering activity, but not when it is merely the victim, prize, or passive instrument of racketeering.

*Id.*

Under the circumstances of this case, and taking all facts and inferences in non-movant's favor, this Court cannot say that a reasonable trier of fact would be compelled to reject plaintiff's RICO claim. Further, with regard to the Securities fraud claim, it appears there are genuine issues of material facts.

Therefore,

IT IS ORDERED defendants' motion for summary judgment is DENIED.

This order is not final or appealable.